No. 14-5074

In the

# United States Court of Appeals
## for the Federal Circuit

———————————

STEPHANIE MERCIER and AUDRICIA BROOKS,
*Plaintiffs-Appellants*

v.

UNITED STATES,
*Defendant-Appellee*

**On Appeal from the United States District Court of Federal Claims,
1:12-cv-00920, Judge Elaine Kaplan**

———————————

## BRIEF OF APPELLANTS

———————————

DAVID M. COOK
CLAIR W. BUSHORN
CLEMENT L. TSAO
COOK & LOGOTHETIS, LLC
22 W. NINTH ST.
CINCINNATI, OH 45202
(513) 721-0444
dcook@econjustice.com
cbushorn@econjustice.com
ctsao@econjustice.com

*Counsel for Plaintiffs-Appellants*
**ORAL ARGUMENT REQUESTED**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## STEPHANIE MERCIER, et al. v. UNITED STATES OF AMERICA
No. 2014-5074

## CERTIFICATE OF INTEREST

Counsel for the Appellant certifies the following:

1.  The full name of every party or amicus represented by me is:

    Stephanie Mercier, Audricia Brooks, on behalf of themselves and all others similarly situated.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    See #1 above.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    n/a

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    David M. Cook, Claire W. Bushorn, Clement L. Tsao of Cook & Logothetis, LLC;
    Robert H. Stropp, Jr. of Mooney, Green, Saindon, Murphy & Welch, P.C.;
    E. Douglas Richards of E. Douglas Richards, PSC;
    Michael Hamilton of Provost Umphrey Law Firm, LLP.


7/3/2014_____            /s/ David M. Cook_____
Date                                     Signature of counsel

                                         David M. Cook_____
                                         Printed name of counsel

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF AUTHORITIES ............................................................... v

STATEMENT OF RELATED CASES ............................................... xi

STATEMENT OF JURISDICTION ...................................................... 1

I. STATEMENT OF THE ISSUES ................................................. 1

II. STATEMENT OF THE CASE .................................................... 2

    A. Introduction ..................................................................... 3

    B. Registered Nurses Appointed under Title 38 of the United
       States Code ...................................................................... 4

    C. The VA's Nationwide Electronic Health Records System ................. 6

    D. Requiring Nurses to Manage View Alerts Outside of their
       Regular Work Schedules ..................................................... 7

III. SUMMARY OF THE ARGUMENT ............................................. 9

IV. ARGUMENT ........................................................................ 13

    A. Standard of Review ........................................................... 13

    B. The Court of Federal Claims erred in relying on and applying
       *Doe II* to Title 38 overtime statutory provisions and dismissing
       Appellants' overtime claims ................................................ 14

          1. Because neither Title 38 statutory provisions nor VA
            policies contain a procedural writing requirement, *Doe II*
            does not apply to Title 38 overtime claims. ..................... 15

2. In the absence of procedural requirements, provisions for administratively uncontrollable overtime, and the distinctions between regular and irregular overtime found under Title 5, the Court should instead apply a more liberal overtime authorization standard to Title 38 overtime provisions. ................................................................................... 20

3. Less formal or restrictive than the overtime authorization standard under Title 5, the *Anderson* authorization standard requires a higher level of inducement than tacit expectation and should be applied to Title 38 overtime. .................................. 25

4. The urgent nature of VA nursing employment makes the *Anderson* overtime authorization standard the more appropriate standard to apply to Title 38 overtime. ....................... 29

5. The Court should apply the *Anderson* overtime authorization standard to Appellants' Title 38 overtime claims so that the VA cannot eliminate all overtime liability and subvert Congressional intent to compensate for overtime work ............... 34

C. In the alternative, to the extent that the Court of Federal Claims did not err in requiring "an express directive" in order to trigger overtime entitlement, the Court of Federal Claims did not correctly apply the federal pleading standard to Counts I and III of the Complaint. ................................................................................ 38

D. The Court of Federal Claims erred in dismissing Appellants' basic pay claims for compensation for hours worked performing VA work, but not paid as failing to state a claim upon which relief may be granted. ..................................................... 42

V. CONCLUSION. ............................................................................. 45

CERTIFICATE OF SERVICE ................................................................ 48

iii

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS ................................................................................................. 49

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*Adams v. United States*,
   162 Ct. Cl. 766 (1963) ................................................................. 27, 28

*AFGE, Local 3669 v. Shinseki*,
   821 F. Supp. 2d 337 (D.D.C. 2011) ...................................................5

*Albright v. United States*,
   161 Ct. Cl. 356 (1963) ........................................................ 11, 26, 27

*Anderson v. United States*,
   136 Ct. Cl. 365 (1956) ................................................................. *passim*

*Anderson v. United States*,
   201 Ct. Cl. 660 (1973) ......................................................................37

*Aviles v. United States*,
   151 Ct. Cl. 1 (1960); ...................................................................... 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................... 12, 14, 39

*Bennett v. United States*,
   4 Cl. Ct. 330 (1984) ......................................................................16

*Byrnes v. United States*,
   163 Ct. Cl. 167 (1963) ............................................................... *passim*

*Cary v. United States*,
   552 F.3d 1373 (Fed. Cir. 2009) ................................................ 38, 45

*Chevron USA., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ........................................................................ 23, 24

*Curry v. United States*,
  66 Fed. Cl. 593 (2005) ...........................................................................4

*DeCosta v. United States*,
  22 Cl. Ct. 165 (1990) ..................................................................... 27, 28

*Doe v. United States (Doe I)*,
  54 Fed. Cl. 404, 413-14 (2002) ............................................... 27, 29, 30

*Doe v. United States (Doe II)*,
  372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 549 U.S. 1321 (2007)........... passim

*Gould, Inc. v. United States*,
  935 F. 2d 1271 (Fed. Cir. 1991) ..................................................... 13, 40

*Hannon v. United States*,
  29 Fed. Cl. 142 (1993) ................................................................... 16, 26

*James v. Von Zemenszky*,
  284 F.3d 1310 (Fed. Cir. 2002) ...........................................................5

*Jentoft v. United States*,
  450 F.3d 1342 (Fed. Cir. 2006) .........................................................13

*Manning v. United States*,
  10 Cl. Ct. 651 (1986) ..................................................................... 16, 26

*Moyer v. United States*,
  190 F.3d 1314 (Fed. Cir. 1999) .........................................................13

*Mumbower v. Callicott*,
  526 F.2d 1183 (8th Cir. 1975) ...........................................................26

*New York Life Ins. Co. v. United States*,
    190 F.3d 1372 (Fed. Cir. 1999) ..........................................................13

*Noel v. Season-Sash, Inc.*,
    722 S.W.2d 901 (Ky. App. 1986) ........................................................43

*Office of Personnel Management v. Richmond*,
    496 U.S. 414 (1990) .................................................................... 17, 19

*Parts Depot, Inc. v. Beiswenger*,
    170 S.W.3d 354 (Ky. 2005) ............................................................ 43

*Rapp v. United States*,
    167 Ct. Cl. 852 (1974) ............................................................ *passim*

*Schweiker v. Hansen*,
    450 U.S. 785 (1981) .................................................................... 17, 19

*Skinner v. Switzer*,
    131 S. Ct. 1289 (2011) ....................................................................14

*Sommers Oil Co. v. United States*,
    241 F.3d 1375 (Fed. Cir. 2001) ................................................ *passim*

*United States v. Rosenwasser*,
    323 U.S. 360 (1945) ........................................................................25

**Statutes**

28 U.S.C. § 1295(a)(3) ............................................................................1

28 U.S.C. § 1491(a)(1) (2006) ................................................................1

29 U.S.C. § 203(g) .................................................................................25

29 U.S.C. § 213(b) ................................................................43

29 U.S.C. §§ 201-219 ...........................................................23

38 U.S.C. § 7301(b) ......................................................... 4, 30

38 U.S.C. §§ 7401-7474 ........................................................4

38 U.S.C. § 7401(1) .......................................................... 3, 42

38 U.S.C. § 7404 ..................................................................42

38 U.S.C. § 7404(b) .............................................................42

38 U.S.C. § 7421 ......................................................... 5, 24, 36

38 U.S.C. § 7421(a) ........................................................ 4, 24

38 U.S.C. § 7422 ......................................................... 5, 35, 36

38 U.S.C. § 7422(b) ...............................................................5

38 U.S.C. § 7422(b)(3) .........................................................35

38 U.S.C. § 7422(d) ...............................................................5

38 U.S.C. § 7422(d)(3) .........................................................35

38 U.S.C. § 7425(b) ......................................................... 4, 20

38 U.S.C. § 7453 ........................................................... *passim*

38 U.S.C. § 7453(e) ....................................................... *passim*

38 U.S.C. § 7459 ...................................................................2

viii

38 U.S.C. §§ 7421 ................................................................................20

38 U.S.C. 7453(e) ...............................................................................45

5 U.S.C. § 5332 ..................................................................................42

5 U.S.C. § 5332(a)(1) ..........................................................................42

5 U.S.C. § 5332(b) ..............................................................................42

5 U.S.C. § 5504(b) ..............................................................................42

5 U.S.C. § 5504(b)(1) ..........................................................................42

5 U.S.C. § 5542 ......................................................................... 9, 14, 15

5 U.S.C. § 5545(c) ...................................................................... 21, 22

**Rules**

RCFC 12(b)(1) ......................................................................................3

RCFC 12(b)(6) ............................................................................ *passim*

RCFC 56(a) ........................................................................................40

RCFC 8(a)(2) .............................................................................. *passim*

**Regulations**

29 C.F.R. § 785.11 ......................................................................... 25, 26

29 C.F.R. § 785.24 ..............................................................................26

29 C.F.R. § 785.25 ..............................................................................26

5 C.F.R. § 550.111(c) ................................................................................ 15

**Other Authorities**

Richard A Oppel, Jr. and Abby Goodnough, *Doctor Shortage Is Cited in Delays at V.A. Hospitals*, NYTIMES.COM (May 29, 2014) .................................................. 31

Secretary of Veterans Affairs, 38 U.S.C. § 7422 Determination Letter (May 19, 2008) ................................................................................................ 35

## STATEMENT OF RELATED CASES

No other appeal in or from this action was previously before this or any other appellate court. Counsel knows of no other case pending in this Court or any other court that may directly affect, or be directly affected by, the Court's decision in this appeal.

## STATEMENT OF JURISDICTION

1.      Under the Tucker Act, the Court of Federal Claims has jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). In Counts I, III, and IV of the Complaint, Appellants Stephanie Mercier and Audricia Brooks allege violations of overtime (Counts I and III) and basic pay (Count IV) under 38 U.S.C. § 7453 and Department of Veterans Affairs (VA) policies and procedures, respectively. Therefore, the Court of Federal Claims properly exercised its jurisdiction over Counts I, III, and IV in reaching the Order and Opinion on February 27, 2014 now on appeal. A4.

2.      This Court has exclusive jurisdiction under 28 U.S.C. § 1295(a)(3) to review final decisions of the Court of Federal Claims.

3.      Appellants timely filed their Notice of Appeal on April 18, 2014 appealing the Order and Opinion, and Judgment, on Counts I, III, and IV of the Complaint.

## I.    STATEMENT OF THE ISSUES

1.      Whether the Court of Federal Claims erred in dismissing Appellants' overtime claims, set forth in Counts I and III of the Complaint, by applying *Doe v.*

1

*United States (Doe II)*, 372 F.3d 1347 (Fed. Cir. 2004), *cert. denied*, 549 U.S. 1321 (2007), and requiring "an express directive from an authorized VA official" in order to trigger overtime entitlement under 38 U.S.C. § 7453(e) and VA policies and procedures? A12.

2.     Regardless of Appellants' overtime entitlement under Title 38 as presented in the first issue above, whether the Court of Federal Claims erred in dismissing Appellants' claims for compensation for hours worked performing VA work, but not paid, set forth in Count IV of the Complaint, as failing to state a claim upon which relief may be granted?

## II.     STATEMENT OF THE CASE

Appellants brought this action to complain that the Department of Veterans Affairs (VA) violated overtime and basic pay provisions under Title 38 and VA policies and procedures for failing to compensate them for overtime and basic pay. Specifically, Appellants alleged violations on six counts: Count I) violations of additional pay overtime under 38 U.S.C. § 7453(e), Count II) violations of the special rules for overtime under 38 U.S.C. § 7459, Count III) violations of overtime under VA policies and procedures, Count IV) violations of basic pay under VA policies and procedures, Count V) unjust enrichment, and Count VI) quantum meruit.

In response, pursuant to the Rules of the United States Court of Federal Claims (RCFC), the Government filed a motion to dismiss under RCFC 12(b)(1) for Counts II, V, and VI and under RCFC 12(b)(6) for Counts I, III, and IV. The Court of Federal Claims in an order and opinion issued by Judge Elaine D. Kaplan on February 27, 2014 granted the Government's motion to dismiss on all six counts. Appellants appeal from the order and opinion, and judgment entered, on Counts I, III, and IV only and seek a reversal of the order and opinion with respect to these counts.

### A.    Introduction

Appellants, Stephanie Mercier and Audricia Brooks, are two nurse practitioners representing a putative class of registered nurses who are currently or formerly employed by the VA. They have sued the VA to claim compensation for work the VA requires them to perform, but for which they have yet to receive compensation of any kind. Their claims are limited to work performed on, and attendant to, electronic and computer patient records, and is work that the VA considers to be within the scope of patient care clinical duties. A18, A21, A23, A48, A49. Appellants and the class members they seek to represent are registered nurses and advanced practice nurses, which include nurse practitioners, clinical nurse specialists, and nurse anesthetists appointed under 38 U.S.C. § 7401(1). A24-

3

A25. In short, they are the very people who provide first line clinical care to millions of our nation's veterans.

### B.    Registered Nurses Appointed under Title 38 of the United States Code

In 1946, Congress created what is now known as the Veterans Health Administration (VHA) to provide medical care and hospital service for returning World War II veterans. 38 U.S.C. § 7301(b); A2. Due to the unique nature of the new health care program, Congress enacted a personnel system that is primarily independent of the civil service and the regulatory provisions under Title 5 of the United States Code. *See* 38 U.S.C. §§ 7401-7474 (Title 38); *Curry v. United States*, 66 Fed. Cl. 593, 595 (2005). Unless provided for by specific reference, no Title 5 provision pertaining to the civil service system that is inconsistent with the provisions under Chapter 74 of Title 38 may "supersede, override, or otherwise modify" a provision under Chapter 74 of Title 38. 38 U.S.C. § 7425(b).

Congress vested the Secretary of the Department of Veterans Affairs with greater flexibility in hiring, firing, and compensation than otherwise available under the Title 5 system. *See* 38 U.S.C. §§ 7401-7474 (Title 38); *Curry*, 66 Fed. Cl. at 595. In particular, the Secretary has the authority to prescribe regulations governing the "hours and conditions of employment and leaves of absence" for all registered nurses appointed under Title 38, or Title 38 nurses. 38 U.S.C. § 7421(a). Although the VA "has not issued a comprehensive set of regulations implementing

4

the VHA personnel provisions in title 38," the agency pursuant to its authority under 38 U.S.C. § 7421 has "set forth its interpretation of the title 38 personnel provisions in the form of manuals, directives, and handbooks." *James v. Von Zemenszky*, 284 F.3d 1310, 1318-19 (Fed. Cir. 2002).

With respect to collective bargaining and compensation, Title 38 nurses have limited ability to challenge pay practices or violations, specifically, any issue arising out of the "establishment, determination, or adjustment of employee compensation." 38 U.S.C. § 7422. Issues which the VA deems to "arise[] out of . . . the establishment, determination, or adjustment of employee compensation" are not subject to collective bargaining, may not be grieved under negotiated grievance procedures, and may not be submitted to arbitration or third party review by the Federal Labor Relations Authority (FLRA). *Id*. In other words, unlike employees covered by statutory provisions under Title 5, some of whom also work at the VA, Title 38 nurses may not grieve any issue involving their pay, which includes overtime. In general, the only challenge available to Title 38 nurses for disputes involving pay is through judicial review. *See AFGE, Local 3669 v. Shinseki*, 821 F. Supp. 2d 337, 350 (D.D.C. 2011) (where the VA exceeded its statutory authority under 38 U.S.C. § 7422(d) by inappropriately applying the collective bargaining exclusion for matters concerning "professional conduct or competence" under 38 U.S.C. § 7422(b) to the union's unfair labor practice charges).

5

### C. The VA's Nationwide Electronic Health Records System

The VA has implemented a nationwide electronic health records (EHR) system called the Computerized Patient Record System (CPRS). A59. The VA uses this system to communicate clinical information to medical practitioners, including Title 38 nurses. A21, A59. Within this system, communication alerts, or "View Alerts," are sent to a nurse's VA-assigned inbox, or CPRS account. *Id*. Sent directly to nurses for management, View Alerts contain time-sensitive requests for information or follow-up, require review, analysis, and in many cases additional follow up action to be taken by the recipient. *Id*. View Alerts may be generated by physicians, other providers, pharmacies, laboratories, patients, and other individuals and locations from within as well as outside the VA system. *Id*. CPRS and patient health records may be accessed outside of the VA facility by remote access to CPRS through a VA policy that furnishes nurses with laptops and gives nurses the ability to remotely access CPRS on their personal home computers. *Id*.

Managing View Alerts is work that the VA considers to be within the scope of patient care clinical duties. A21, A48-A49. Under VA policy, Title 38 nurses have a professional responsibility as patient advocates to promptly manage, or complete, all View Alerts. A21. Although there is no limit as to the number of View Alerts a nurse may receive or be asked to manage, View Alerts that are not completed within fourteen days are automatically removed from a nurse's account.

6

*Id*. Electronically stored health record entries, including View Alerts, are required to be "accurate, relevant, timely and complete;" "[n]otes must be reviewed and signed promptly, as defined by facility policy;" and "electronic health record users must respond promptly (as defined by facility policy) to 'View Alerts,' which notify them of documents requiring authentication." A60. In addition, nurses are required to communicate test results "no later than 14 calendar days from the date on which the results are available to the ordering practitioner," and abnormal test results require review and communication "in the timeframe that minimizes risk to the patient." A64.

## D. Requiring Nurses to Manage View Alerts Outside of their Regular Work Schedules

Appellants and other similarly situated nurses receive an overwhelming and continuously increasing volume of View Alerts. A22-A23. Due to the overwhelming volume as well as the urgent nature of many View Alerts, Appellants are unable to timely and promptly manage their View Alerts within their regular tour of duty, or their daily and weekly work requirement. *Id*. Appellants' supervisors, and the supervisors of putative class members, are aware of the volume of View Alerts that they receive and are aware that Appellants are unable to promptly manage their View Alerts within their regular work schedules, but refuse to adjust their workload or work schedules. *Id*. Appellants and other nurses who do not work beyond their tour of duty to manage their View Alerts face

adverse employment action from their supervisors, including "intensified scrutiny, management intervention, and disciplinary action for poor time management." A22.

As a result of experiencing adverse employment actions from their supervisors combined with the overwhelming volume and urgent nature of the View Alerts, Appellants must work beyond or outside of their regular schedules either at the VA facility or at home, using a VA-issued laptop or on their personal home computers by CPRS remote access, in order to promptly manage their View Alerts. A21, A22, A23, A24, A28, A33. For Appellants and other similarly situated nurses, the VA requires that they perform work that falls under the scope of patient care clinical duties – compensable VA work – beyond their daily and weekly work schedules or requirement. A28, A33; A48-A49. Despite the VA's requirement that they work beyond their work schedules to manage View Alerts in accordance with VA policies and professional medical practices, the VA does not provide Appellants, and others similarly situated, with compensation of any kind for all hours worked in excess of their tour of duty. A21, A22, A23, A28, A33. As a result, Appellants are entitled to compensation pursuant to Title 38 overtime and basic pay provisions and VA policies and procedures.

Unable to pursue a grievance, Appellants brought this action to recover overtime or basic pay for all uncompensated hours spent managing View Alerts,

work they had no choice but to perform. On appeal, Appellants seek a reversal of the Court of Federal Claims order and opinion granting the Government's motion to dismiss with respect to Counts I, III and IV of the Complaint.

## III. SUMMARY OF THE ARGUMENT

Under Counts I and III of the Complaint, Appellants have alleged violations of Title 38 overtime pay provisions under 38 U.S.C. § 7453 and VA policies and procedures. Because this case brought under Title 38 is one of first impression, the Court of Federal Claims did not have any binding precedent on which it could rely or that it was required to follow. Along with the applicable and relevant Title 38 statutory provisions and VA policies, the Court of Federal Claims primarily relied on case law interpreting the overtime provisions of the Federal Employee Pay Act (FEPA) under 5 U.S.C. § 5542 and on one case in particular, *Doe v. United States (Doe II)*, 372 F.3d 1347 (Fed. Cir. 2004), *cert. denied*, 549 U.S. 1321 (2007). However, this reliance and application of *Doe II* was in error.

The significance of *Doe II* is the court's conclusion that an agency's procedural written requirement was valid despite the plaintiffs' claims that the agency requirement would restrict overtime liability or that it would produce an inequitable result. *Doe II*, 372 F.3d at 1357. However, because neither Title 38 statutory provisions nor VA policies contain a procedural writing requirement, *Doe*

*II*, a case interpreting a Title 5 overtime statute, should not apply to Title 38 overtime provisions.

By adopting and prescribing the "express directive" authorization requirement under *Doe II* and applying a formal and restrictive overtime authorization standard to Title 38 overtime provisions, the Court of Federal Claims opinion encroaches upon and undermines, or at the very least is inconsistent with, the VA's authority to promulgate employment policies. A12. Rather than applying a formal and restrictive overtime authorization standard and requiring Title 38 nurses obtain an "express directive from an authorized VA official," in the absence of procedural requirements, provisions for administratively uncontrollable overtime, and the distinctions between regular and irregular overtime found under Title 5, the Court should instead apply a more liberal overtime authorization standard consistent with a line of cases that began with *Anderson v. United States*, 136 Ct. Cl. 365 (1956).

Under the *Anderson* line of cases, the standard for overtime authorization is not as formal or restrictive as an express approval or a written requirement. In the absence of formal or express approval, the *Anderson* standard requires a level of inducement that amounts to compulsion or coercion that is higher than tacit expectation. *See Byrnes v. United States*, 163 Ct. Cl. 167, 174 (1963); *Rapp v.*

*United States*, 167 Ct. Cl. 852 (1974); *Albright v. United States*, 161 Ct. Cl. 356 (1963).

The urgent nature of VA nursing employment makes the *Anderson* authorization standard more appropriate for Title 38 overtime provisions. Both the Government and the Court of Federal Claims have recognized that for VA nurses, "urgent or emergency situations involving patient care" make a writing authorization requirement impractical. A11. Similarly, the overwhelming volume of View Alerts that are required to be timely managed should also be treated as urgent patient care matters and should not be held to a formal and restrictive overtime authorization standard. Due to the urgent nature of patient care and because the VA has not promulgated any interpretive regulations concerning overtime procedures, Title 38 nurses should not be held to a formal and restrictive authorization standard, and instead should be held to the more liberal *Anderson* authorization standard.

Furthermore, the Court should apply the *Anderson* overtime authorization standard to Appellants' Title 38 overtime claims so that the VA cannot eliminate all overtime liability and subvert Congressional intent to compensate for overtime work. In light of all of the statutory, regulatory, factual, and policy considerations, the *Anderson* overtime authorization standard should apply to Title 38 overtime provisions. When the *Anderson* standard is applied to Appellants' overtime

11

allegations, it is clear that Appellants have sufficiently stated a claim upon which relief may be granted under RCFC 12(b)(6).

In the alternative, to the extent that the Court of Federal Claims did not err in requiring "an express directive" in order to trigger overtime entitlement under Title 38, the Court of Federal Claims misapplied the federal pleading standard to Counts I and III of the Complaint. Rather, the Court of Federal Claims applied a stricter pleading standard than what is required under RCFC 8(a)(2) to Appellants' overtime allegations by requiring that every aspect of the overtime violations be alleged. Having alleged overtime authorization that is the equivalent of requirement, and compulsion, as well as the performance of uncompensated VA work beyond the tour of duty, it is clear that Appellants have "raise[d] a right to [overtime] relief above a speculative level" and "state[d] [an overtime] claim to relief that is plausible on its face." A21-A24, A28, A60; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). As a result, the Court of Federal Claims' conclusion that Counts I and III of the Complaint fail to state a relief upon which relief may be granted under RCFC 12(b)(6) was in error.

In Count IV of the Complaint, Appellants have alleged violations of basic pay provisions under VA policies and procedures. Appellants have performed a significant amount of VA work, i.e., managing View Alerts, which they are required to complete, but for which they have not been compensated in any amount

12

of basic or overtime pay. A20, A21, A35. Since no federal statute has repealed the common law duty of an employer, including the federal government, to pay its employees their agreed-upon wage for work performed, Appellants are entitled to – at a minimum – basic compensation and have sufficiently stated a claim upon which relief may be granted under RCFC 12(b)(6).

## IV. ARGUMENT

### A. Standard of Review

Whether the Court of Federal Claims properly dismissed Appellants' Complaint for failure to state a claim upon which relief can be granted is a question of law that this Court reviews de novo. *Jentoft v. United States*, 450 F.3d 1342, 1346 (Fed. Cir. 2006); *see also Moyer v. United States*, 190 F.3d 1314, 1317-18 (Fed. Cir. 1999); *New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed. Cir. 1999).

In its review of the Court of Federal Claims' decision to grant the Government's Motion to Dismiss, this Court "must accept as true all the factual allegations in the complaint" and "indulge in all reasonable inferences in favor of the nonmovant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001); *Gould, Inc. v. United States*, 935 F. 2d 1271, 1274 (Fed. Cir. 1991). Although the complaint must set forth enough factual allegations "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on

13

its face," *Twombly*, 550 U.S. at 555, 570, the complaint "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

### B. The Court of Federal Claims erred in relying on and applying *Doe II* to Title 38 overtime statutory provisions and dismissing Appellants' overtime claims.

In its decision dismissing Appellants' overtime claims in Counts I and III of the Complaint, the Court of Federal Claims relied primarily on this Court's decision in *Doe II* – a decision that interpreted Title 5 statutory and administrative provisions under the Federal Employee Pay Act (FEPA), 5 U.S.C. § 5542, and addressed the narrow question of whether a procedural writing requirement was valid in light of FEPA's purpose to pay overtime pay for overtime work that is officially ordered or approved. *Doe II*, 372 F.3d at 1353 (citing *Anderson*, 136 Ct. Cl. at 371). Characterizing Appellants' claims as based on "a theory of implicit authorization or inducement," the Court of Federal Claims concluded that "what is required in order to trigger entitlement to overtime pay under 38 U.S.C. § 7453 is an express directive from an authorized VA official (whether written or verbal), ordering (or explicitly authorizing) an employee to respond to View Alerts after they have completed eight consecutive hours of work in a day or forty hours in a week." A12.

For the reasons that follow, the *Doe II* decision denying overtime claims for Title 5 government attorneys does not apply to Title 38 nurses. As a result, the formal and restrictive overtime authorization standard under Title 5 – "express direction[]" – should not apply to Appellants' Title 38 overtime claims. *Id*. Instead, this Court should adopt the standard articulated and developed under the *Anderson* line of cases.

>    1.    **Because neither Title 38 statutory provisions nor VA policies contain a procedural writing requirement, *Doe II* does not apply to Title 38 overtime claims.**

In *Doe II*, Department of Justice (DOJ) attorneys brought a class action lawsuit in the Court of Federal Claims seeking overtime compensation under the Federal Employees Pay Act (FEPA), 5 U.S.C. § 5542 (2000), which provides for overtime compensation when hours of work in excess of forty hours in an administrative workweek or in excess of eight hours in a day have been "officially ordered or approved." *Id*. § 5542(a). Under the applicable Office of Personal Management (OPM) regulation, "[o]vertime work . . . may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c) (2004). Although it was undisputed that some of the attorneys had worked more than a forty-hour workweek, the attorneys had not obtained an "express directive to work overtime" and had not satisfied the OPM written requirement. *Doe II*, 372 F.3d at 1350, 1363. At issue for

the court was whether the government would be liable for overtime pay, which would be determined by whether the OPM regulation was valid so as to preclude overtime recovery. *Id.* at 1362, 1364.

In its decision, the court recognized that "Court of Claims decisions are, of course, binding upon us unless undermined by intervening Supreme Court or *en banc* authority." *Id.* at 1354. Prior to *Doe II* following the Court of Federal Claims' decision in *Anderson*, 136 Ct. Cl. 365, the Court of Federal Claims had awarded overtime compensation under FEPA based on the principle that "[o]vertime work performed with the knowledge and inducement of supervisory personnel is deemed to be 'officially ordered or approved.' The law will treat as issued those orders that ought to have been issued." *Manning v. United States*, 10 Cl. Ct. 651, 653 (1986) (citing *Anderson*, 136 Ct. Cl. 365; *Byrnes*, 163 Ct. Cl. 167; *Aviles v. United States*, 151 Ct. Cl. 1 (1960); *Bennett v. United States*, 4 Cl. Ct. 330 (1984)). For more than forty years, the Court of Federal Claims upheld this *Anderson* line of cases recognizing that "the mandate to pay additional compensation for overtime hours, when the work was, as here, officially ordered or approved" overrides the procedural written requirement. *Anderson*, 136 Ct. Cl. at 371; *Doe II*, 372 F.3d at 1353. Just a few years prior to the DOJ attorneys bringing their complaint, the Court of Federal Claims had held that overtime authorization "need not necessarily be express." *Hannon v. United States*, 29 Fed. Cl. 142, 149 (1993).

16

However, persuaded by the government's argument that the court was bound by the Supreme Court's decisions in *Schweiker v. Hansen*, 450 U.S. 785 (1981)[1] and *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990),[2] the court proceeded to reverse the Court of Federal Claims' liability determination made on summary judgment. *Doe II*, 372 F.3d at 1357. In reaching its decision to reverse, the court held:

> [T]o the extent that the *Anderson* line of Court of Claims cases held that the Civil Service Commission was without authority to impose a 'procedural' written order requirement because it restricted the substantive scope of the overtime statute or because of equitable considerations, they are inconsistent with *Hansen* and *Richmond*. In light of *Hansen and Richmond*, we are compelled to hold that the *Anderson* line of cases is no longer good law and that the written

---

[1]    In *Hansen*, the Supreme Court held that the Social Security Administration ("SSA") was not estopped from enforcing an agency regulation that required applications for Social Security benefits to be in writing after a field representative erroneously advised an applicant that she was ineligible to receive benefits. *Hansen*, 450 U.S. at 790. The Supreme Court concluded:

> Congress expressly provided in the Act that only one who 'has filed application' for benefits may receive them, and it delegated to petitioner the task of providing by regulation the requisite manner of application. A court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits.

*Id*.

[2]    In *Richmond*, the Supreme Court similarly rejected a disability benefit recipient's estoppel claim that he had received erroneous oral and written advice from a federal employee concerning the nature of his benefits. *Richmond*, 496 U.S. at 415. Relying on *Hansen*, the Supreme Court held that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized. *Id*. at 426.

order requirement is not invalid on the ground that it imposes a procedural requirement that limits the right to overtime compensation under the statute or because it is inequitable.

*Doe II*, 372 F.3d at 1357.

Although *Doe II* rejected the *Anderson* line of cases, the decision limited its holding to apply only to the extent that a procedural requirement may be contrary to or restricts the statutory provisions of the overtime statute. *Doe II* simply made clear that an administrative agency's procedural requirement that authorization for overtime be given in writing could not be deemed invalid because it limited the right to overtime pay or due to equitable considerations.[3] In short, *Doe II* does not affect overtime claims under statutes and regulations that do *not* include a writing requirement.

Consequently, *Doe II* does not apply to Appellants' Title 38 overtime claims. Appellants' overtime claims arise pursuant to Title 38 statutory provisions and VA agency policies, which are separate and distinct from the Title 5 statutory and OPM regulatory scheme, and most importantly, which do not require written or even express permission for overtime. Unlike the *Doe II* attorneys who were

---

[3]     Moreover, *Doe II* did not overrule all application of equitable considerations, but only overruled the application of equitable considerations to the procedural written order requirement interpreting the Title 5 overtime statute. There is no case law under Title 5 or Title 38 of which Appellants are aware that has overruled the application of equitable considerations when there are no procedural written requirements at issue, as is the case with Appellants' Title 38 overtime claims.

asking the court to "override" or set aside an agency regulation – the OPM writing requirement – Appellants do not challenge the validity of, or ask the Court to "override," any procedural or writing requirement because no procedural requirement *of any kind* exists under Title 38. For Title 38 nurses, overtime simply has to be "officially ordered or approved." 38 U.S.C. § 7453(e). As a result, because no Title 38 statutory provision or VA agency policy implicates any procedural or writing requirement, neither of the Supreme Court's decisions in *Hansen* or *Richmond* are applicable to Appellants' overtime claims. If neither *Hansen* nor *Richmond* applies, then neither should *Doe II*.

To reiterate, the significance of the *Doe II* decision was the court's conclusion that the OPM procedural written requirement – despite any claims that it was contrary to the intent of the payment statute, restricted the right to overtime, or would produce an inequitable result – was valid. It was only because the written requirement was held to be valid, due to the Court's application of *Hansen* and *Richmond*, that the court did not affirm the Court of Federal Claims' overtime liability determination in favor of the DOJ attorneys. *Doe II*, 372 F.3d at 1357. Therefore, *Doe II* should only be applicable to overtime claims under statutes that are interpreted by an administrative regulation or procedural written requirement, i.e., to Title 5 overtime claims only. *Id*. Because neither Title 38 statutory

provisions nor VA policies include such a procedural written requirement, *Doe II* simply does not apply to Appellants' overtime claims.

> **2. In the absence of procedural requirements, provisions for administratively uncontrollable overtime, and the distinctions between regular and irregular overtime found under Title 5, the Court should instead apply a more liberal overtime authorization standard to Title 38 overtime provisions.**

Applying *Doe II* to Appellants' Title 38 overtime claims, the Court of Federal Claims prescribes a formal and restrictive overtime authorization standard by requiring "an express directive from an authorized VA official (whether written or oral)" in order to trigger overtime entitlement. A12. This reliance on and application of *Doe II* is inconsistent with Title 38.

Congress has vested the VA with the authority to promulgate its own regulations pertaining to the hours and conditions of employment of its employees. *See* 38 U.S.C. §§ 7421 and 7425(b). As represented by the Government at oral argument before the Court of Federal Claims, the VA does not require, and has not promulgated, any additional procedural requirements for Title 38 nurses to trigger entitlement to overtime.[4] In fact, the Government in its Motion to Dismiss

---

[4]    In fact, according to VA policy, "Overtime is payable for service performed in excess of 40 hours in an administrative workweek, or in excess of 8 hours in a day, whichever is greater, at a rate of one and one-half times the employee's basic rate of pay." A71. Under this language, not only is it clear that there is no procedural or written requirement, but it also appears that the VA has opted for not more, *but less* formality for overtime entitlement by simply prescribing the number

conceded that, "[i]n light of the fact that urgent or emergency situations involving patient care may make such a [written] requirement impractical, VA regulations do not explicitly require a written order in all circumstances." Def.'s Mot. to Dismiss at 10, n.4. In other words, the Government effectively recognizes that for Title 38 nurses order or approval in the form of an "express directive" or "more formal means of authorization" cannot in many cases be obtained, and admits that a formal and restrictive overtime authorization standard is impractical. On this critical point, Appellants and the Government agree. Consequently, a formal and restrictive overtime authorization standard applicable to Title 5 employees should not apply to either Title 38 nurses or to Appellants' overtime claims.

As the Court of Federal Claims notes in its decision below, unlike FEPA overtime provisions, Title 38 overtime does not "creat[e] an alternative basis for entitlement to overtime pay for employees who occupy positions in which their hours cannot be controlled administratively," or does not allow for "administratively uncontrollable overtime." A11; *see* 5 U.S.C. § 5545(c). Under FEPA, if formal compliance with the procedural written requirement is impossible, such as when an employee is in a position where "hours of duty cannot be controlled administratively" and "requires substantial amounts of irregular,

---

of hours of service that must be worked in order to be entitled to overtime pay. In light of the *Doe II* decision, the VA could have clarified its overtime policy to require "an express directive" or oral permission and set forth "a more formal means of authorization" for overtime entitlement, *but it did not*.

unscheduled, overtime duty," an employee may receive "administratively

uncontrollable overtime," or "premium pay for this duty on an annual basis . . . [at]

an appropriate percentage, not less than 10 percent nor more than 25 percent." *Doe*

*II*, 372 F.3d at 1360 (quoting 5 U.S.C. § 5545(c)(2)). The fact that the Title 5

overtime provisions provide for an exception to the formal written authorization

requirement where compliance with the requirement is impractical was an

important factor in the *Doe II* court's determination that the OPM written

requirement, or "a more formal approval process," was reasonable and valid "for

employees whose hours of work are subject to administrative control." A11. (citing

*Doe II*, 372 F.3d at 1360-61).

In contrast, Title 38 overtime contemplates no provision for administratively

uncontrollable overtime and does not distinguish between regular and irregular

overtime. *See* 38 U.S.C. § 7453(e); *see also* 5 U.S.C. § 5545(c). Title 38 overtime

simply requires that overtime work be "officially ordered or approved." 38 U.S.C.

§ 7453(e). Therefore, the absence of a provision for administratively

uncontrollable overtime or a distinction between regular and irregular overtime

should incline the Court towards a more liberal overtime authorization standard for

Title 38 employees.

Indeed, the only requirement under 38 U.S.C. § 7453(e) for overtime work

and pay is that overtime hours of service must be "officially ordered or approved."

As part of the *Doe II* court's *Chevron* analysis to determine whether the OPM

overtime writing requirement was entitled to agency deference, the *Doe II court*

concluded, "[c]learly, the [] *Chevron* requirement – ambiguity [of the phrase

"ordered or approved"] – is present." *Doe II*, 372 F.3d at 1359; *see Chevron USA.,*

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

Although the *Doe II* court appeared to incline towards the government's

interpretation that the "officially ordered or approved" language under FEPA

"requir[ed] a more formal means of authorization," this interpretation was made in

the court's comparison to the more expansive language of the "suffer or permit"

overtime standard under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-

219, and was characterizing FEPA Title 5 language that was interpreted by the

OPM regulation at issue. *Doe II*, 372 F.3d at 1361. Under a plain reading of the

phrase, the precise meaning of the "officially ordered or approved" language

remains ambiguous and open to interpretation. *Doe II*, 372 F.3d at 1359.

     Moreover, the fact that the Title 38 statutory overtime provisions do not

contain, or adopt, the same "suffer or permit" language or standard as the FLSA

does not mean that the formal and restrictive authorization standard under FEPA

must necessarily apply, or even that the "suffer or permit" standard under the

FLSA could not apply.[5] Promulgating regulations that interpret Title 38 statutory provisions should be left up to the VA, not the courts. The fact that the VA has not promulgated any procedural requirement or agency restrictions should be all the more reason to apply a more liberal overtime authorization standard.

By adopting and prescribing *Doe II*'s "express directive" authorization requirement and applying the formal and restrictive overtime authorization standard under Title 5 to Title 38 overtime provisions, the Court of Federal Claims' prescription encroaches upon and undermines, or at the very least is inconsistent with, the VA's authority to promulgate employment policies under 38 U.S.C. § 7421(a).[6] In the absence of procedural requirements, provisions for administratively uncontrollable overtime, and the distinctions between regular and irregular overtime found under Title 5, the Court should instead apply a more liberal overtime authorization standard, one that can take into consideration the

---

[5]    In theory, the VA could promulgate an overtime authorization policy that mirrors the FLSA "suffer or permit" standard and under the VA's regulatory authority, 38 U.S.C. § 7421, and under the *Chevron* deference, it would likely be valid. *See Chevron*, 467 U.S. at 842-43; *Doe II*, 372 F.3d at 1359 ("Under *Chevron*, if a statutory term is ambiguous, the agency's regulation implementing it is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.") (citations and internal quotations omitted).

[6]    Under 38 U.S.C. § 7421(a), "Notwithstanding any law, Executive order, or regulation, the Secretary shall prescribe by regulation the hours and conditions of employment and leaves of absence of employees appointed under any provision of this chapter in positions in the Veterans Health Administration [including registered nurses]."

"urgent or emergency situations involving patient care," to Title 38 overtime

provisions and Appellants' overtime claims, i.e., the standard articulated by the

*Anderson* line of cases.

### 3. Less formal or restrictive than the overtime authorization standard under Title 5, the *Anderson* authorization standard requires a higher level of inducement than tacit expectation and should be applied to Title 38 overtime.

For Title 38 nurses who do not have a procedural written requirement in

order to receive overtime, and in the absence of express written approval, the more

appropriate overtime authorization standard to apply is the standard developed

under the *Anderson* line of cases. In advancing this argument, it is important to

distinguish the *Anderson* standard from the expansive "suffer or permit" overtime

standard under the FLSA. Contrary to the Court of Federal Claims'

characterization, the two authorization standards are not the same. Under the

*Anderson* standard, a higher level of inducement – higher than the FLSA "suffer or

permit" standard or mere tacit expectation – is required.

As noted in *Doe II*, often characterized as simply inducement, the FLSA

"suffer or permit" standard is quite expansive. *Doe II*, 372 F.3d at 1360. The

Supreme Court has aptly observed that "[a] broader or more comprehensive

coverage of employees . . . would be difficult to frame." *United States v.

Rosenwasser*, 323 U.S. 360, 362 (1945); *see also* 29 U.S.C. § 203(g); 29 C.F.R. §

785.11 (2003). Under FLSA, it is well settled that:

> [D]uties performed by an employee before and after scheduled hours, even if not requested, must be compensated if the employer 'knows or has reason to believe' the employee is continuing to work, 29 C.F.R. § 785.11 (1974), and the duties are an 'integral and indispensable part' of the employee's principal work activity.

*Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) (citing *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); 29 C.F.R. §§ 785.24 and 785.25 (1974)).

In comparison, and as noted above, under the *Anderson* standard developed by the Court of Federal Claims prior to *Doe II*, "[o]vertime work performed with the knowledge and inducement of supervisory personnel is deemed to be 'officially ordered or approved.' The law will treat as issued those orders that ought to have been issued." *Manning*, 10 Cl. Ct. at 653; *see also Hannon*, 29 Fed. Cl. at 149 (holding that overtime authorization "need not necessarily be express").

In applying this standard, the Court of Federal Claims has not always found in favor of the overtime-seeking plaintiff. In *Albright*, 161 Ct. Cl. 356, a group of civilian security guards were required – pursuant to a regulation – to report fifteen minutes prior to the beginning of their tour of duty, but due to "tacit expectation" actually reported at least twenty minutes early. *Albright*, 161 Ct. Cl. at 358-59. Finding that the security guards were entitled to fifteen minutes overtime as required under the regulation, the court ruled against the security guards on the extra five minutes holding that:

> 'tacit expectation' is not equivalent to the statutory requirement of 'official order or approval.' The plaintiffs not only have the burden of

26

> proving that they were ordered to appear 20 minutes before the shift
> started, but also that the order was issued by one having the authority
> to do so.

*Id*. at 361. In other words, "tacit expectation" or simply supervisory silence does

not satisfy "official order or approval" for overtime – even under the *Anderson* line

of cases. *Id*; *see also Rapp*, 167 Ct. Cl. at 862.

Prior to *Doe II*, the Court of Federal Claims also recognized the nature of

employees' job circumstances and the extent to which employees had been

pressured to complete overtime work when determining the degree of formality of

overtime approval required. *Doe v. United States* ("*Doe I*"), 54 Fed. Cl. 404, 413-

14 (2002) (citing *DeCosta v. United States*, 22 Cl. Ct. 165 (1990)). In *Adams v.*

*United States*, 162 Ct. Cl. 766, 769-70 (1963), the court recognized the exigent

circumstances faced by border patrol inspectors who worked for the Immigration

and Naturalization Service and found that:

> Sometimes these assignments were of an emergency nature, obviously
> not permitting of advance approval by a high official in Washington.
> Even where there was no unforeseeable emergency, the work was of
> such a character and the need for overtime so irregular but recurrent
> that it would normally be impossible or overly difficult to obtain
> advance approval from the Washington officials for each specific
> overtime period to be worked by the border patrol inspectors of the
> Service throughout the country.[7]

---

[7]     It is worth noting that the reasoning the court articulated here is exactly the
same reasoning the Government offered in its Motion to Dismiss as to why the VA
does not require prior written approval for overtime when the Government
recognized that "urgent or emergency situations involving patient care may make
such a requirement impractical." Def.'s Mot. to Dismiss at 10, n.4. In other words,

*Id.*

In *Byrnes*, 163 Ct. Cl. 167, the Court of Federal Claims concluded that the government's inducement of overtime as to criminal investigators for the Alcohol and Tobacco Tax Division of the Internal Revenue Service went beyond "tacit expectation." The court held:

> In the present case, the 'expectation' was not tacit; it was made so explicit in terms as to amount to inducement and compulsion . . . Had plaintiffs confined themselves to a rigid 40-hour week in the face of the clear inducement and compulsion exerted by their superiors to require overtime work, they would have been derelict in the performance of their sworn duties in the enforcement program and revenue collection of the Alcohol and Tobacco Tax Division.

*Id.* at 174, 176; *see also DeCosta v. United States*, 22 Cl. Ct. 165, 177 (1990); *Rapp*, 167 Ct. Cl. at 863 ("Plaintiffs were not only 'induced' to perform duty officer tours but were given reasonable and understandable grounds for fearing that they might jeopardize their positions if they did not do so. In other words, plaintiffs worked under circumstances that amounted to duress and coercion."[8]). Thus, prior to *Doe II*, the Court of Federal Claims had clearly distinguished inducement

---

the Government has recognized that the *Anderson* overtime authorization standard is the more appropriate standard to apply given the nature of nursing employment.

[8]      Like the *Byrnes* and *Rapp* plaintiffs, Appellants have alleged a level of overtime inducement that rises to a level of compulsion, or even duress. Specifically, Appellants have alleged that there is the "expectation, requirement, and inducement to work [] additional hours" and that they have been subjected to "intensified scrutiny, management intervention, *and disciplinary action* for poor time management" for failing to complete an overwhelming and increasing volume of work. A21-A24, A28. (emphasis added).

involving mere "tacit expectation," which falls short of "official order or approval," from inducement amounting to compulsion or coercion that does satisfy the statutory overtime authorization requirement.

Taken together, although both the FLSA "suffer or permit" and the *Anderson* standards are broader than the formal overtime authorization standard and written requirement under Title 5, the two standards are by no means the same. The FLSA "suffer or permit" standard is comprehensive in its coverage while the *Anderson* standard requires a higher showing of inducement that effectively amounts to compulsion or coercion as demonstrated by the *Byrnes* and *Rapp* cases. Instead of the formal and restrictive authorization standard required under Title 5, for the factual, statutory, and policy considerations discussed in the next sections, the *Anderson* authorization standard as outlined above is the appropriate overtime authorization standard for this Court to apply to Appellants' Title 38 overtime claims.

> **4.      The urgent nature of VA nursing employment makes the *Anderson* overtime authorization standard the more appropriate standard to apply to Title 38 overtime.**

Perhaps most salient when considering Appellants' Title 38 overtime claims are the factual distinctions between Appellant nurses providing medical care for our nation's veterans and the *Doe II* attorneys providing legal services to the government. As the government correctly noted in *Doe I*, "'[the] DOJ's mission is

not to provide around the clock legal services." *Doe I*, 54 Fed. Cl. at 416. In contrast, "provid[ing] a complete medical and hospital service for the medical care and treatment of veterans" is exactly the mission of the VA. 38 U.S.C. § 7301(b). Often times, providing complete medical care requires treatment, attention, or follow up at any and all hours of the day and night when serious life and death consequences are at stake for veteran patients and their families. As a result of this medical reality, the VA to a level far beyond "tacit expectation" requires, or compels, Title 38 nurses to work additional hours managing their View Alerts, without compensation, to complete their ever-increasing workloads. A22-A23.

While Appellants have not expressly pled that they received "express directive[s] from an authorized VA official," Appellants have pled that authorized VA officials effectively required, and compelled, them to work additional hours beyond their tours of duty. A22-A23, A28. In response, the Government (with the Court of Federal Claims in reluctant agreement) has proposed that the proper remedy to the allegations raised by the Appellants is to simply drop everything at the end of their daily or weekly schedule. A12, n.11. This would then provoke disciplinary action from which they could challenge and ultimately win – no matter the medical consequences (e.g., even longer wait times for appointments and procedures, delayed test results, treatment, and prescriptions filled, all of which could lead to adverse or even potentially life-threatening patient outcomes). *Id*. Put

30

simply, the Government urges Title 38 nurses to put their nursing licenses and careers in jeopardy, and offering as the solution for them to commit medical malpractice. Despite this, as the Government would have it, these nurses would have the comfort of knowing that the VA would not, or at least should not, be able to impose any disciplinary action for whatever adverse medical outcomes would inevitably occur. A20, A21. To paraphrase *Byrnes*, to place the burden on the nurses and expect them to confine their work "to a rigid 40-hour week in the face of the clear inducement and compulsion exerted by their superiors to require overtime work" would cause them to be "derelict in the performance of their [professional responsibilities as nurses]." *Byrnes*, 163 Ct. Cl. at 176. No nurse should be put into this unethical position, and yet Title 38 nurses are – on a regular and ongoing basis.[9]

Moreover, Appellants have alleged that much of the unpaid overtime work at issue was done off-site typically at home through laptops issued by the VA or on a personal home computer through remote access to CPRS. A21. VA policy

---

[9]     Given the recent revelations of excessive wait times at VA facilities across the country, directing Title 38 nurses to compromise patient care and neglect their professional and VA responsibilities – required work – would unquestionably exacerbate what already appears to be a systematic failure on the part of the VA with respect to issues related to staffing, compensation, and access to care based on the news stories that have been widely reported. *See* e.g., Richard A Oppel, Jr. and Abby Goodnough, *Doctor Shortage Is Cited in Delays at V.A. Hospitals*, NYTIMES.COM (May 29, 2014), http://www.nytimes.com/2014/05/30/us/doctor-shortages-cited-in-va-hospital-waits.html?_r=0.

requires that all "off-site," or outside of the VA facility, work be approved by the

facility Director: "Off-site patient care . . . must also be directly related to VA's

mission and *approved by the facility Director or designee* and properly

documented. For examples, see paragraph 2g(3) below." A47. (emphasis added).

Looking at the examples cited reveals that the regulations specifically contemplate

what Appellants have alleged in the Complaint:

> 2g(3) Examples. VA managers are responsible for assigning work,
> and for ensuring VA employees are performing work that supports
> VA's missions. *VA work can consist of veteran patient care*, research,
> educational or administrative *work performed either at the VA
> Medical Center or off-site. Off-site work must be directly related to
> VA's mission and approved by the Director or designee.* The list
> below includes examples of on-site and off-site work, but is not
> inclusive.
> * * *
> (b) Off-Site:
>
> 1. Clinical. *This includes providing services . . . regarding a VA
> patient from another site (e.g., reading x-rays from home or entering
> patient notes via remote computer log-on*).

A48, A49. (emphasis added).

VA policy makes clear the importance of CPRS work, specifically entering

patient notes via remote computer log-on (i.e., work within the scope of View

Alert management), to the VA's mission. A47-A49. Managing View Alerts, even

when performed off-site, serves a vital purpose that is considered a necessary

aspect of patient care clinical duties. *Id.* By providing nurses with the ability to

manage View Alerts outside of the VA facility with laptops and CPRS remote

access, the VA reinforces the urgent nature of timely and prompt View Alert

management, which VA policies require. A60, A64. As Appellants have alleged,

View Alerts are continuously generated 24-hours-a-day by a variety of other CPRS

users and medical providers within and outside of the VA with many alerts that

require "immediate attention" in order to "minimize the risk to the patient." A21,

A64. Therefore, in to order ensure that nurses have the ability to take the

appropriate immediate action to respond to urgent alerts that can come literally at

any time of the day or night and by issuing VA laptops and enabling remote CPRS

access, the VA has given nurses not just the ability to perform CPRS work

managing View Alerts outside the VA facility, but through effective compulsion,

the "official order and approval" to work outside of their schedules. A21-A24,

A28. The VA cannot have it both ways – requiring, approving, and benefiting from

the performance of VA work that it has approved to take place outside the VA

facility and that it has compelled beyond the tour of duty while at the same time

refusing to compensate for that work claiming that it was not "officially ordered or

approved."

Given that the urgent nature of patient care and VA policy both require

prompt View Alert management, that the VA has given nurses the means to

manage their View Alerts outside of the facility and outside of their work

schedules, and that nurses experience adverse employment actions for their failure

33

to promptly manage View Alerts, it is clear that the VA has effectively compelled, or even coerced, the performance of overtime work, far beyond "tacit expectation," and has "officially ordered and approved" overtime. A21-A24, A28. Just as the Government and the Court of Federal Claims have recognized that "urgent or emergency situations involving patient care" make a procedural writing requirement impractical, this Court should also recognize that the overwhelming volume of VA work, specifically the management of View Alerts, that the VA requires Title 38 nurses to timely and promptly perform should similarly be treated as the urgent patient care matters that they are and recognize that the restrictive formal authorization of "an express directive" is not appropriate or practical. A11, A12, A60. Since the VA has promulgated no procedural overtime authorization requirement and in light of these factual and ethical considerations presented, Title 38 nurses should not be required to obtain an "express directive" in order for that work to be "officially ordered or approved" as overtime.

> **5. The Court should apply the *Anderson* overtime authorization standard to Appellants' Title 38 overtime claims so that the VA cannot eliminate all overtime liability and subvert Congressional intent to compensate for overtime work.**

The "express directive" requirement is also problematic because it not only limits VA overtime liability, but it also has the potential to eliminate VA overtime

liability altogether.[10] Under 38 U.S.C. § 7422, Title 38 nurses are precluded from grieving or bargaining over any issue concerning the "establishment, determination, or adjustment of employee compensation," which includes overtime pay. 38 U.S.C. § 7422(b)(3). Under its sole discretion to determine what constitutes an issue concerning the "establishment, determination, or adjustment of employee compensation," the VA does not hesitate to invoke the 38 U.S.C. § 7422 collective bargaining exemption whenever there is an overtime grievance challenge or any potential for overtime liability. 38 U.S.C. § 7422(d)(3); *see, e.g.*, Secretary of Veterans Affairs, 38 U.S.C. § 7422 Determination Letter (May 19, 2008), http://www.va.gov/LMR/docs/38USC7422/7422_Louisville_RNovertime_5-19-08.pdf. Thus, Title 38 nurses who have not been compensated for overtime work have no other remedy but to bring suit under 38 U.S.C. § 7453.

In the opinion below, the court may have been attempting to define the appropriate overtime authorization standard for Title 38 nurses (i.e., express direction from an authorized VA official), but what the court actually did was prescribe the formula for eliminating overtime liability under 38 U.S.C. § 7453(e). Under the "express directive" requirement, when faced with an action for unpaid

---

[10]    Although the *Doe II* decision had the effect of precluding the DOJ attorneys from receiving overtime pay, the court expressed legitimate concern that the decision should not be misread as "countenancing any effort by DOJ or any other federal agency to evade the requirements of FEPA and the OPM regulations." *Doe II*, 372 F.3d at 1364. Unfortunately for Title 38 nurses, *Doe II* has been used for the exact purpose of avoiding, and possibly eliminating, VA overtime liability.

overtime, all the VA has to do in order to avoid liability is to simply deny that any "express directive" was ever given by an authorized VA official. The VA can avoid liability by disclaiming that an official was ever authorized to give the order or approval for overtime. If the "express directive" was given verbally, a potential plaintiff would have no way to prove that the "express directive" was actually given beyond hearsay evidence, or a VA official could simply claim that what was perceived to be an "express directive" was misinterpreted. At least with a procedural written requirement as is the case under Title 5, there is a record evidencing the "official order and approval" for overtime.

When the VA's authority to promulgate employment regulations under 38 U.S.C. § 7421 is combined with the VA's ability to stymie any overtime grievance challenge under 38 U.S.C. § 7422, and now combined with the Court of Federal Claims' "express directive" requirement, the VA effectively has the ability to not just limit, but eliminate all overtime liability and prevent any meaningful enforcement challenge under 38 U.S.C. § 7453(e). What the VA now has is a system where "an order [] is lawful if it produces no pecuniary consequences, but otherwise is unlawful . . . An agency that operated on such a system could expect to have its enterprises break up in chaos, and would deserve nothing less."

*Anderson v. United States*, 201 Ct. Cl. 660, 664 (1973).[11] Consequently, to ensure that "the apparent will of Congress that overtime work shall be paid for" is not subverted, to prevent the VA from being able to effectively eliminate all potential overtime liability, and to give Title 38 nurses the opportunity to establish overtime liability, this Court should reject the "express directive" requirement and instead, apply the *Anderson* overtime authorization standard as set forth above to Title 38 overtime and Appellants' overtime claims.

In sum, because neither Title 38 statutory provisions nor VA policies include a procedural written requirement, *Doe II* does not apply to Appellants' overtime claims. By adopting and prescribing the "express directive" authorization requirement under *Doe II* and applying a formal and restrictive overtime authorization standard to Title 38 overtime, the Court of Federal Claims opinion encroaches upon, undermines, or is at least inconsistent with, the VA's authority to promulgate employment policies. Rather than applying a formal and restrictive overtime authorization standard and requiring Title 38 nurses to obtain an "express

---

[11]    A different decision from *Anderson v. United States*, 136 Ct. Cl. 365 (1956), *Anderson v. United States*, 201 Ct. Cl. 660 (1973) addressed the issue of whether a hospital director was authorized to approve overtime for VA nursing assistants covered by Title 5 overtime. The court concluded that, while not authorized to approve regular overtime, the director was nevertheless authorized to approve irregular overtime, a distinction under Title 5 overtime provisions not found under Title 38. *Anderson*, 201 Ct. Cl. at 664 ("We are reluctant to impute to the VA an intent to frustrate the apparent will of Congress that overtime work shall be paid for."). Outside the scope of the *Anderson*, 136 Ct. Cl. 365 line of cases, this holding was not overturned by *Doe II* and still remains good law.

directive from an authorized VA official," in the absence of procedural requirements, provisions for administratively uncontrollable overtime, or the distinctions between regular and irregular overtime found under Title 5, the Court should instead apply a more liberal overtime authorization standard, or the *Anderson* authorization standard, to Title 38 overtime. Furthermore, the Court should also take into account factual and statutory considerations, including the urgent nature of medical care as well as Congressional intent to compensate for overtime work.

When a liberal, or the *Anderson*, authorization standard is applied to Appellants' overtime allegations, there should be no doubt that Appellants have sufficiently stated a claim upon which relief may be granted under RCFC 12(b)(6). *See Sommers Oil Co.*, 241 F.3d at 1378. Accepting all factual allegations as true, it is clear that Appellants have asserted a right to relief, which falls well above the "speculative level," and Appellants' claims are very much "plausible." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009).

**C.** **In the alternative, to the extent that the Court of Federal Claims did not err in requiring "an express directive" in order to trigger overtime entitlement, the Court of Federal Claims did not correctly apply the federal pleading standard to Counts I and III of the Complaint.**

In the alternative, to the extent that this Court finds that the Court of Federal Claims did not err in requiring that "an express directive by an authorized VA

official" is necessary in order to trigger overtime entitlement under Title 38, the lower court's decision should be reversed because the Court of Federal Claims applied a stricter pleading standard than what is required under RCFC 8(a)(2) – "a short and plain statement of the claim showing that the pleader is entitled to relief" – and RCFC 12(b)(6), and thus erred by incorrectly applying the federal pleading standard to Counts I and III of the Complaint. A12; *Twombly*, 550 U.S. at 555, 570.

The Court of Federal Claims did not rule on whether Appellants have set forth sufficient factual allegations in their Complaint "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Instead, the lower court's decision requires that the Complaint allege every detail of the overtime violations in order to trigger overtime entitlement, specifically, that Appellants must explicitly allege "an express directive from an authorized VA official" – a requirement not found in any Title 38 statutory overtime provision or VA policy. A12. The Court of Federal Claims fixates on one narrow aspect of the Appellants' overtime allegations and concludes that simply because the Complaint does not explicitly contain one specific allegation, Appellants somehow have not satisfied the pleading standard, and have not "state[d] a claim to relief that is plausible on its face."[12] *See Twombly*, 550 U.S. at 570.

---

[12] Appellants submit that the pleading requirement under RCFC 8(a)(2) – "a

To reiterate once again, Appellants have alleged that they are required, and compelled, to perform VA work beyond their tour of duty managing View Alerts for which they have not received overtime compensation. Specifically, the VA requires prompt, and in many cases immediate, View Alert management, has approved off-site work by the issuance of VA laptops and CPRS remote access, refuses to adjust patient panel workloads to reflect daily and weekly work schedules and requirements, is fully aware that nurses work beyond their tour of duty, and subjects Appellants and other Title 38 nurses to adverse disciplinary action for failure to timely manage their View Alerts, which can only be accomplished by working beyond the tour of duty. A21-A24, A28, A60. Accepting as true all factual allegations, and indulging all reasonable inferences in favor of Appellants, it is clear that Appellants have sufficiently alleged violations of Title 38 overtime pay under the pleading requirements of RCFC 8(a)(2) and 12(b)(6). *Sommers Oil Co.*, 241 F.3d at 1378; *Gould, Inc.*, 935 F. 2d at 1274. As a result, the Court of Federal Claims' conclusion that Counts I and III of the Complaint fail to state a claim upon which relief may be granted under RCFC 12(b)(6) was in error and must be reversed.

---

short and plain statement of the claim showing that the pleader is entitled to relief" – should not be substituted with the summary judgment requirement under RCFC 56(a) – "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The two requirements are applied at entirely different stages of litigation and must not be conflated.

Furthermore, Appellants have not had the opportunity to engage in any discovery that would show the extent of the VA's overtime requirement, and compulsion, and whether the VA has any policy, not set out in the VA handbooks, directives, or other written policy, to obtain overtime authorization. Indeed, at oral argument before the Court of Federal Claims, the Government admitted that the VA has not prescribed any formal process for "governing how overtime may be 'officially ordered or approved.'" A11, n. 9. By deductive reasoning then, the Government's representation effectively admits that the VA uses an *informal* process by which Title 38 nurses "obtain official order or approval" for overtime. Thus, Appellants' allegations that supervisors require and compel the performance of overtime work should most certainly satisfy the pleading standard and the RCFC 8(a)(2) and 12(b)(6) requirements since Appellants have clearly alleged at least an informal process of overtime authorization. <u>Consequently, the Court of Federal Claims' prescription of "an express directive" requirement should be expanded to include authorization by compulsion, or some degree of informal or formal inducement</u>. Therefore, Appellants should be entitled to conduct discovery on the issue of the VA's informal overtime authorization process – and be able to establish overtime liability under an informal, and liberal, overtime authorization standard, or in other words, the *Anderson* authorization standard. Finally, to the extent that this Court finds that there are deficiencies in the Appellants' Complaint

with respect to Counts I and III, Appellants should be permitted to amend the

Complaint and correct any perceived pleading deficiencies.

> **D.** **The Court of Federal Claims erred in dismissing Appellants' basic pay claims for compensation for hours worked performing VA work, but not paid as failing to state a claim upon which relief may be granted.**

In Count IV, Appellants have alleged that they have performed a significant

amount of VA work, i.e., managing View Alerts, which they are required to

complete, but for which they have not been compensated in any amount of basic

pay or compensation. A20, A21, A35. Under VA policy, management of a Title 38

nurse's View Alert messages, considered to be within the scope of direct patient

care clinical duties, constitutes VA work for which Title 38 nurses appointed by

the VA Secretary under 38 U.S.C. § 7401(1) are paid. A47-A49, A20, A21. Unlike

overtime, which must be "officially order or approved," Title 38 basic pay under

the pay scales prescribed according to 38 U.S.C. § 7404 has no requirement other

than the performance of compensable VA work by an employee appointed under

38 U.S.C. § 7401(1).[13] Because Appellants are nurses appointed under 38 U.S.C. §

7401(1) and have performed compensable VA work for which they have not

---

[13]     Incorporated by 38 U.S.C. § 7404(b), 5 U.S.C. § 5332 sets forth the basic pay schedule applicable to Title 38 nurses and provides that "[e]ach employee to whom this subchapter applies is entitled to basic pay in accordance with the General Schedule." 5 U.S.C. § 5332(a)(1). Incorporated by 5 U.S.C. § 5332(b), 5 U.S.C. § 5504(b) provides the formula applicable to Title 38 nurses for determining the basic hourly rate as follows: "[t]o derive an hourly rate, divide the annual rate by 2087." 5 U.S.C. § 5504(b)(1).

received compensation *of any kind*, Appellants are entitled to at least basic pay for the time spent performing uncompensated VA work managing View Alerts, if not overtime pay.

Moreover, nothing in the federal statutory scheme has repealed the common law duty of an employer, including the United States, to pay its employees their agreed-upon wage for work performed. A wage claim, like Appellants' claim in Count IV, is inherently a contract claim: the employee agrees to work for, and the employee agrees to pay, the agreed-upon hourly wage. In Appellant Mercier's home state of Kentucky, for example, wage claims may be brought as breach of contract claims. *Noel v. Season-Sash, Inc.*, 722 S.W.2d 901 (Ky. App. 1986), overruled on other grounds, *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky. 2005).

The concepts of overtime and the standard 40-hour workweek are purely statutory in origin. Until Congress enacted FLSA in 1938, and the various states enacted similar statutes over the years, an employee without a contract had no right to receive overtime pay. Indeed, the FLSA itself has developed a long list of occupations that are exempt from its overtime pay requirements. 29 U.S.C. § 213(b) excludes, for example, certain transportation workers (¶¶ 1, 2 and 3), poultry and dairy buyers (¶ 5), seamen (¶ 6), radio announcers (¶ 9), car salesmen (¶ 10), livestock farmworkers (¶ 13), taxi drivers (¶ 17), domestic servants (¶ 21),

etc.  However, no federal law exempts workers, other than salaried administrative, executive, and professional employees, from receiving their regular hourly wage for the hours that they work, even if they work more than forty hours in a given week.

The VA, however, essentially argues that Title 38 nurses, who work beyond the administrative workweek, or more than forty hours per week, in order to perform their assigned job duties, comply with VA policies, and fulfill their professional responsibilities as nurses so as not to commit medical malpractice must perform the extra work *for free*. Appellants submit that there is no federal statute or case that supports such a position, and that the VA has substituted the long-standing common law rule that an employer must pay at least something for an hourly employee's time with the "officially ordered or approved" authorization standard for *overtime* pay under Title 38.  Therefore, even if Appellants are not entitled to overtime pay for work that the VA required and compelled them to perform (or for that matter, "suffered or permitted" them to work) beyond their regular workweek, they should certainly be entitled to proceed with their claims under Count IV and be paid at their regular, agreed-upon basic hourly wage for the uncompensated hours performing VA work in excess of an administrative workweek, or for more than forty hours per workweek.

Accepting all the factual allegations as true, Appellants have sufficiently stated a claim upon which relief may be granted under RCFC 12(b)(6), and are entitled to basic pay relief as set forth in Count IV of the Complaint. *See Sommers Oil Co*., 241 F.3d at 1378; *Cary*, 552 F.3d at 1376.

## V.   CONCLUSION

For the reasons stated above, Appellants respectfully request that the Court reverse the Court of Federal Claims' order and opinion on Counts I, III, and IV of the Complaint and remand the case for further proceeding in accordance with the Court's decision.

With respect to the overtime claims under Counts I and III of the Complaint, Appellants specifically request that the Court reject the Court of Federal Claims' application of *Doe II* to Title 38 overtime provisions under 38 U.S.C. 7453(e), reject the Court of Federal Claims' prescription that "an express directive by an authorized VA official" is necessary to trigger overtime entitlement, conclude that a more liberal overtime authorization standard – the *Anderson* overtime authorization standard – should apply to Title 38 overtime provisions, and conclude that under the *Anderson* overtime authorization standard, Appellants have sufficiently stated a claim upon which relief may be granted under RCFC 12(b)(6).

In the alternative, to the extent that the Court finds that the Court of Federal Claims did not err in requiring that "an express directive" is necessary in order to

45

trigger overtime entitlement under Title 38, Appellants respectfully request that the Court conclude that the Court of Federal Claims erred in its application of the federal pleading standard, and the requirements under RCFC 8(a)(2), to Appellants' overtime allegations set forth in Counts I and III of the Complaint, hold that the Court of Federal Claims' prescription of "an express directive" requirement should be expanded to include authorization by compulsion, or some degree of informal or formal inducement, and after "draw[ing] all reasonable inferences in favor of the non-movant," find that Appellants in Counts I and III of the Complaint have sufficiently stated an overtime claim under Title 38 upon which relief may be granted under RCFC 12(b)(6). *Sommers Oil Co.*, 241 F.3d at 1378. To the extent that this Court finds that there are deficiencies in the Complaint with respect to Counts I and III, Appellants respectfully request that they be permitted to amend the Complaint and correct any pleading deficiencies.

With respect to the basic pay claims under Count IV of the Complaint, Appellants respectfully request that the Court conclude that Appellants have sufficiently stated a claim upon which relief may be granted under RCFC 12(b)(6).

46

Respectfully submitted,

_/s/ David M. Cook_____
David M. Cook
   *Attorney of Record for Appellants*
Claire W. Bushorn
   *Of counsel for Appellants*
Clement L. Tsao
   *Of counsel for Appellants*
**Cook & Logothetis, LLC**
22 W. Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-0444
Fax: (513) 721-1178
dcook@econjustice.com
cbushorn@econjustice.com
ctsao@econjustice.com

# CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all parties.

_/s/ David M. Cook_____
David M. Cook
 *Attorney of Record for Appellants*
**Cook & Logothetis, LLC**
22 W. Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-0444
Fax: (513) 721-1178
dcook@econjustice.com

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   _X_  The brief contains _11,438_ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   _X_  The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14-point font size and Times New Roman type style.

_____/s/ David M. Cook_____

(Signature of Attorney)

_____David M. Cook_____

(Name of Attorney)

_____Appellant_____

(State whether representing appellant, appellee, etc.)

_____July 3, 2014_____

(Date)

Addendum

| Date Filed | Docket Number | Document Description | Addendum Page Number |
|---|---|---|---|
| 02/27/2014 | 24 | Order and Opinion | Add. 1 |
| 02/27/2014 | 25 | Judgment | Add. 14 |

# In the United States Court of Federal Claims

No. 12-920C
(Filed: February 27, 2014)

| | |
|---|---|
| STEPHANIE MERCIER, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

38 U.S.C. § 7453; Motion to dismiss for lack of subject matter jurisdiction; RCFC 12(b)(1); Motion to dismiss for failure to state a claim upon which relief can be granted; RCFC 12(b)(6); overtime pay; "officially ordered or approved"; <u>Doe v. United States</u>

*David M. Cook*, Cook & Logothetis, LLC, Cincinnati, OH, for plaintiffs.

*Michael Paul Goodman*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## O R D E R   A N D   O P I N I O N

**KAPLAN, Judge.**

This case is before the Court on the government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). The plaintiffs in this action are two individuals and a putative class of registered nurses who are currently or were formerly employed by the Department of Veterans Affairs ("VA"). They contend that they were denied basic and overtime pay as well as compensatory time off to which they are entitled under 38 U.S.C. § 7453, as well as VA regulations and policies. They seek backpay with interest, pursuant to the Back Pay Act, 5 U.S.C. § 5596(b), as well as attorney fees and costs.

The government argues that the Court lacks jurisdiction over Counts II, V and VI of the complaint and that Counts I, III, and IV fail to state claims on which relief may be granted. For the reasons set forth below, the government's motion to dismiss is granted.

## BACKGROUND

Congress created what is now the Veterans Health Administration in 1946 to "to provide a complete medical and hospital service for the medical care and treatment of veterans" who were then returning home after World War II. 38 U.S.C. § 7301(b). See Athey v. United States, 78 Fed. Cl. 157, 158-59 (2007); Curry v. United States, 66 Fed. Cl. 593, 595 (2005). To staff this new service with medical professionals, Congress established a personnel system that gives the Secretary of Veterans Affairs authority over hiring and other personnel-related matters, and that is largely independent of title 5 of the United States Code, which generally governs the federal civil service. See 38 U.S.C. §§ 7401–7474.

The plaintiffs in this case are two nurse practitioners who work for the VA, along with a putative class of registered nurses who are currently or were formerly VA employees covered by the title 38 system. They allege that during all relevant times, up to and including the present, they have been required to work additional hours in excess of the thresholds established for triggering entitlement to overtime pay in 38 U.S.C. § 7453,[1] in order to "perform[] patient care clinical duties and professional responsibilities known as View Alerts using VA, non-VA, or personal home computers or laptops." Compl. at ¶ 14.[2]

Plaintiffs further allege that nurse supervisors and other VA personnel with the authority to order or approve overtime work and pay had knowledge that, in order to complete View Alerts as required, the individual plaintiffs and class members worked overtime hours on a "recurring and involuntary basis" and that VA supervisors and other personnel "expected, required, and induced plaintiffs and other class members to work those additional hours performing View Alerts." Id. at ¶ 17. They claim that nurses who do not perform overtime work "to complete a

---

[1] In accordance with 38 U.S.C. § 7453(e)(1), "[a] nurse performing officially ordered or approved hours of service in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours, shall receive overtime pay for each hour of such additional service. The overtime rates shall be one and one-half times such nurse's hourly rate of basic pay."

[2] According to the Complaint:

> View Alerts are electronic, written, patient-related, and time-sensitive requests for information or follow up that are sent directly to nurses through their individually VA assigned accounts to complete. View alerts may be sent from physicians, other providers, pharmacies, laboratories, patients, and other individuals and locations from within as well as outside the VA system. View Alerts may be sent at any time and at any hour of the day or night. View Alerts are continuously sent to nurses to complete with no limit as to how many View Alerts each nurse may receive or be asked to perform. View Alerts that are not completed within two (2) weeks are automatically removed from a nurse's account. Under their professional responsibilities as patient advocates, nurses have an obligation to complete all View Alerts.

Compl. at ¶ 15.

**Add. 2**

sufficient volume of View Alerts, as subjectively deemed by VA management, are subject to intensified scrutiny, management intervention, and disciplinary action for poor time management." Id. at ¶ 18.  Moreover, according to the Complaint, VA management has never offered to reduce either the volume of View Alerts or the workload in other areas of their responsibilities to enable the plaintiffs "to have a workload that realistically reflects their actual work requirement and can be completed within a regularly scheduled shift." Id. at ¶ 19.  To the contrary, plaintiffs allege, the VA has increased their workloads by "continually expanding the size of the panel of patients to which each nurse is assigned or for which each nurse is effectively responsible." Id. at ¶ 20.  Finally, plaintiffs allege that their requests for overtime pay or compensatory time off for overtime hours worked have been granted on some occasions, but denied in others, and that they have made numerous unsuccessful attempts to correct VA's practice of failing to pay them for overtime hours worked. Id. at ¶¶ 21-24.

In Count I of their complaint, the plaintiffs allege that the VA's knowledge of the fact that they have worked overtime hours on a recurring and involuntary basis, and its "expectation, requirement, and inducement to work those additional hours constitute [the VA's] order or approval for the additional hours worked." Id. at ¶ 40.  They further allege that VA's failure to compensate the plaintiffs for the overtime hours they have worked violates the overtime pay provisions set forth at 38 U.S.C. § 7453.[3]  Compl. at ¶¶ 41-42.  In Count II, plaintiffs allege that by "expect[ing], requir[ing] and induc[ing]" the plaintiffs to work overtime hours, the VA has violated the provisions of 38 U.S.C. §§ 7459(a) and (b), which prohibit the VA from requiring nursing staff to work more than forty hours in an administrative workweek or for more than eight consecutive hours (except in emergencies as provided in subsection (c) and with other exceptions not relevant here). Compl. at ¶¶ 44-51.  Count III alleges that the VA's actions have violated certain agency handbooks and directives governing work schedules and overtime pay. Id. at ¶¶ 52-67.  In Count IV, plaintiffs allege that by "expect[ing], requir[ing] and induc[ing]" the plaintiffs to work overtime hours without compensation, the VA has violated its own basic pay regulations and policies. Id. at ¶¶ 68-74.  Count V alleges that the VA has been "unjustly enriched" by its practice of failing to pay its nurses for overtime hours worked, and Count VI seeks recovery of backpay on a theory of quantum meruit. Id. at ¶¶ 75-82.

## DISCUSSION

### I. Jurisdiction

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages (United States v. Mitchell, 463 U.S. 206, 215 (1983)), but it does not confer any substantive rights. United States v. Testan, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract,

---

[3] See note 1, supra.

statute, regulation or constitutional provision.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

In this case, Counts I-IV of the complaint are based on statutory and regulatory provisions.  To determine whether those statutes and regulations are "money-mandating," the court applies a two-step test.  Samish Indian Nation v. United States, 657 F.3d 1330, 1335 (Fed. Cir. 2011).  First, the court determines whether any substantive law imposes specific obligations on the Government.  Id.  If that condition is met, then the court proceeds to step two, "whether the relevant source of substantive law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes."  Id. (quoting United States v. Navajo Nation, 556 U.S. 287, 291 (2009) (quotations omitted)).  The Court of Federal Claims has jurisdiction under the Tucker Act "if the substantive law at issue is 'reasonably amenable to the reading that it mandates a right of recovery in damages.'"  Id. (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003)).

There is no dispute that this Court has jurisdiction over Counts I, III, and IV of the complaint, which assert claims for backpay and other monetary relief based on alleged violations of 38 U.S.C. § 7453 (the statute establishing entitlement to pay at overtime rates in specified situations) (Count I) and VA policies and procedures governing employees' entitlement to the payment of overtime and basic pay (Counts III and IV).  The statutory and regulatory provisions that form the bases for these claims are clearly "money-mandating," as they require the VA "to pay employees certain amounts under certain circumstances."  Price v. Panetta, 674 F.3d 1335, 1339 (Fed. Cir. 2012) (citing Hall v. United States, 617 F.3d 1313, 1317–18 (Fed. Cir. 2010) (compensation for days employee was engaged in jury service)); Brodowy v. United States, 482 F.3d 1370, 1375–76 (Fed. Cir. 2007) (statute providing additional pay to FAA employees transferring between certain positions is money mandating); In re United States, 463 F.3d 1328, 1334 (Fed. Cir. 2006) (statute fixing salary of bankruptcy judges is money mandating); Bosco v. United States, 931 F.2d 879, 882 (Fed. Cir. 1991) ("prevailing rate" wage statute is money mandating).  This Court therefore has jurisdiction over Counts I, III, and IV under the Tucker Act.

On the other hand, the government contends that this Court lacks jurisdiction over the statutory claim in Count II of the complaint, which alleges a violation of 38 U.S.C. § 7459.  That provision states, in pertinent part, that:

> Except as provided in subsection (c) [providing exceptions for specified emergency situations], the Secretary may not require nursing staff to work more than 40 hours (or 24 hours if such staff is covered under section 7456 of this title) in an administrative work week or more than eight consecutive hours (or 12 hours if such staff is covered under section 7456 or 7456A of this title).

38 U.S.C. § 7459(a).

As the government correctly observes, nothing on the face of this provision requires the payment of money to nursing staff where the prohibition it contains is violated.  The plaintiffs argue, however, that while § 7459(a) "may not expressly provide for money damages, the statute

does expressly implicate issues pertaining to overtime work, which under 38 U.S.C. § 7453 must be compensated at one and one-half times a nurse's basic hourly rate of pay." Pls.' Resp. at 24. Plaintiffs also note that the Complaint alleges that nurses who have refused to work beyond the hours specified in § 7459(a) have been subjected to "intensified scrutiny" as well as disciplinary actions and that it can be inferred that the statute creates a right on the part of these individuals to recover damages for losses arising out of such actions. Id. at 24-25.

The plaintiffs' arguments are unpersuasive. The requirement that nurses be compensated at time and a half rates does not derive from § 7459; it is based on § 7453, which is, as the Court noted above, a money-mandating statute. On the other hand, there is nothing in § 7459 that suggests that the provision, in and of itself, creates a substantive right to money damages for its violation.

Moreover, to the extent that plaintiffs or members of the putative class have been disciplined or suffered adverse personnel actions as a result of refusing to work overtime hours as prohibited by § 7459(a), they would be asserting a right granted to them by § 7459(b)(2), which states that such a refusal may not be grounds for discrimination, dismissal or "any other adverse personnel action." Such claims would be covered by the disciplinary and grievance procedures set forth at 38 U.S.C. Chapter 74, Subch. V, and would not form a basis for a claim under the Tucker Act in this Court.

Similarly unpersuasive are the plaintiffs' arguments that this Court has jurisdiction over Counts V and VI of their complaint, which are premised on theories of unjust enrichment and "quantum meruit," both of which are equitable doctrines that are based on contracts implied in law. Keehn v. United States, 110 Fed. Cl. 306, 329-30 (2013). "Implied-in-law" claims are not within this Court's Tucker Act jurisdiction. See, e.g., Lumbermens Mut. Cas. Co. v. United States, 654 F.3d 1305, 1316 (Fed. Cir. 2011).[4]

Finally, the plaintiffs cite James v. Caldera, 159 F.3d 573, 580-81 (Fed. Cir. 1998) for the proposition that Counts II, V, and VI should not be dismissed because they are "incidental to and collateral of" the monetary claims in their complaint over which this Court does possess jurisdiction. Pls.' Resp. at 25-26. But contrary to plaintiffs' argument, this limited grant of authority to issue equitable orders exists "[t]o provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). It does not provide a basis for exercising jurisdiction over separate causes of action for which no Tucker Act jurisdiction lies.

---

[4] In their response brief (at page 26), the plaintiffs appear to recharacterize the claims in Counts V and VI as being based on breach of an implied-in-fact contract. Assuming the plaintiffs were to move to amend their complaint to assert such a claim, this Court would have Tucker Act jurisdiction to resolve it. But such an amendment would be futile as the claim would be subject to dismissal under Rule 12(b)(6) because the relationship between the government and its employees is governed by statute and regulations, not contract. Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995); see also Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (observing that it is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government").

II.     **Failure to State a Claim**

The Court turns now to the government's motion to dismiss under RCFC 12(b)(6).  In ruling on a RCFC 12(b)(6) motion to dismiss, the court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  While the court must draw all reasonable inferences in favor of the non-moving party, Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp.  v. Twombly, 550 U.S. 544, 555 (2007).  In other words, plaintiffs' claim must be plausible on its face.  Id. at 570; Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A.     **Counts I and III—Violation of the Overtime Provisions of 38 U.S.C. § 7453 and Implementing VA Rules and Directives**

Counts I and III of the Complaint allege that in violation of statute and its own implementing rules and directives the VA has engaged in a practice of failing and refusing to pay plaintiffs at the time and one-half rates prescribed by 38 U.S.C. § 7453(e)(1) for "officially ordered or approved hours of service performed in excess of 40 hours in the administrative workweek or in excess of eight consecutive hours."  Specifically, and as discussed in greater detail above, the plaintiffs allege that they were "expected, required, and induced" on a "recurring and involuntary basis" to work overtime hours in order to meet the VA's requirement that they respond to "View Alerts" in a prompt and timely fashion.  They allege that nurse supervisors and other VA personnel with the authority to order and approve overtime work and pay had knowledge that plaintiffs were performing this overtime work and that nurses who did not work overtime were subjected to discipline for failing to complete a sufficient volume of View Alerts.

The government contends that plaintiffs have failed to set forth facts in Counts I and III sufficient to establish their entitlement to overtime pay under 38 U.S.C. § 7453(e)(1).  It argues that the complaint does not allege that the plaintiffs were explicitly directed to work overtime hours and that, therefore, they have failed to allege that the overtime hours that they worked were "officially ordered or approved" as required by the statute.  Def.'s Mot. to Dismiss at 8.  Relying upon the Federal Circuit's decision in Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 549 U.S. 1321 (2007), which involved the interpretation of essentially identical statutory language contained in the Federal Employee Pay Act (FEPA), 5 U.S.C. § 5542, the government argues that "[t]itle 38's requirement that overtime be 'officially ordered or approved' requires a more formal means of authorization than contemplated by . . . . plaintiffs in this case."  Def.'s Mot. to Dismiss at 9.[5]

_____

[5]  The government also argues that plaintiffs' own allegations reveal that overtime pay could not have been officially ordered or approved because the Complaint states that requests for overtime pay "in order to complete additional View Alerts were denied."  Def.'s Mot. to Dismiss at 7

In <u>Doe</u>, attorneys employed by the Department of Justice filed a class action suit in this Court seeking overtime compensation under FEPA. That statute provides, in pertinent part, that "[f]or full-time, part-time, and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek or . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for . . . at [the overtime rates provided by the FEPA statute]." 5 U.S.C. § 5542(a).

The plaintiffs in <u>Doe</u>, like the plaintiffs here, did not allege that they had been explicitly ordered to perform their required work on an overtime basis. 54 Fed. Cl. 404, 406 (2002) (observing that "[n]o authorized official directed plaintiffs to perform duties during the period before or after their eight-hour day or forty-hour week" and "[n]o authorized official expressly approved the performance of extra hours of work by plaintiffs"). Nonetheless, relying upon a line of Court of Claims decisions that began with <u>Anderson v. United States</u>, 136 Ct. Cl. 365 (1956), this Court concluded that the statutory requirement that overtime hours be "officially ordered or approved" did not require such an explicit order to perform work on an overtime basis. Instead, the Court held that the requirement that overtime be "officially ordered or approved" was satisfied by evidence establishing that the plaintiffs had been "induced" to work overtime. <u>Doe</u>, 54 Fed. Cl. at 416-17. It found such inducement based on the unrebutted evidence that DOJ attorneys were expected by managers at every level of the Justice Department to put in extra hours, that this expectation was communicated to them both verbally and through written policy statements, that their workloads could not be satisfactorily handled without working overtime hours, and that they did, in fact, work substantial amounts of overtime with the knowledge of their supervisors and high level officials at DOJ. 54 Fed. Cl. at 405.[6]

In this case, the allegations in plaintiffs' complaint parallel those of the DOJ attorneys in <u>Doe</u>. Plaintiffs allege that they worked significant amounts of overtime hours responding to View Alerts, that such alerts could come at any time of the day or night, that their supervisors

_____

(quoting Compl. at ¶ 21). This argument is circular and lacks merit. If plaintiffs were officially ordered to work overtime, they are entitled to receive pay at overtime rates; the fact that their requests for pay at overtime rates were subsequently denied would not defeat their legal entitlement.

[6] The Court found that:

> Attorneys are expected to work overtime and they do so on a regular basis. They are induced to work overtime by direct supervisors, if not authorized officials as defendant would define them. The overtime that they work is well known at the highest levels of the Justice Department. The Department recognizes that it could not function properly within its budget constraints without officially induced and approved overtime work by government attorneys.

54 Fed. Cl. at 405.

and other VA personnel knew that they were performing these duties on an overtime basis (and, in fact, supplied them with agency laptops so that they could work on the View Alerts at home), that nurses who did not timely respond to View Alerts were subject to intensified scrutiny and possible disciplinary action, and that—in order to perform these duties—nurses were required to work overtime. These allegations—if proven true—would likely suffice to establish precisely the sort of "inducement" that this Court found sufficient to create an entitlement to overtime on the part of DOJ attorneys within the meaning of 5 U.S.C. § 5542(a).

The key issues in this case, therefore, are whether and to what extent this Court's conclusion in Doe—that "inducement" to work overtime satisfies statutory language requiring that such overtime be "officially ordered or approved"—survived the Federal Circuit's reversal of this Court's decision on appeal and whether there is any reason to distinguish the FEPA statute from title 38. The plaintiffs argue that the court of appeals' reversal of this Court's decision in Doe was based entirely on the existence of a regulation promulgated by the Office of Personnel Management (OPM) pursuant to FEPA, 5 C.F.R. § 550.111(c), which required that overtime be "ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." Pls.' Surreply at 2. They point out that the OPM regulation does not govern here and that the VA has not promulgated a similar rule requiring that orders to work overtime be memorialized in writing by an authorized official. Pls.' Surreply at 3. They contend that "[b]ut for a procedural writing requirement, the [court of appeals] would not have reversed the lower court's decision that 'official inducement suffices to warrant compensation.'" Id. (citing Doe, 372 F.3d at 1348) (emphasis in original).

The government disagrees with the plaintiffs' characterization of the court of appeals' decision. It contends that—in addition to concluding that OPM's regulation required that there be a written order from an authorized official—the court of appeals rejected the reasoning of the Anderson line of cases that "inducement" to work overtime satisfied the statutory requirement that overtime be "officially ordered or approved." Def.'s Resp. to Pls.' Surreply at 2.

For the reasons set forth below, the Court concludes that in light of the Federal Circuit's reasoning in Doe, a showing that plaintiffs were "induced" to work overtime, or that they were "required" [7] to do so in order to cope with their workloads, is insufficient to establish their entitlement to receive pay at overtime rates under 38 U.S.C. § 7453. Instead, entitlement to overtime pay is triggered only when an authorized VA official has, either verbally or in writing, expressly directed an employee to perform specified hours of overtime outside of their regular shifts in order to meet work requirements, or where such official has approved pay at overtime

---

[7]    While the plaintiffs have emphasized that they are "required" to work overtime by VA, it is clear that this "requirement" does not arise out of any explicit order that the nurses should or must respond to View Alerts after they complete eight consecutive hours of work in a day or forty hours in a week. Instead, the "requirement" to which plaintiffs refer is a requirement that they perform certain work ("promptly" responding to a high volume of View Alerts). See Pls.' Resp. at 5, 17. It is that requirement to promptly respond, when coupled with the rest of plaintiffs' workload, which they allege "requires" them to respond to the View Alerts on an overtime basis.

rates after the fact. Because plaintiffs have not alleged that they were expressly directed to work specific overtime hours for which they were not compensated, the government's motion to dismiss Counts I and III must be granted.

### 1. The Court of Appeals' Decision in <u>Doe</u>

In <u>Doe</u>, the government sought reversal of this Court's decision ruling the DOJ attorneys were entitled to overtime pay under FEPA on the basis of an OPM regulation requiring that—in order to be compensable at overtime rates—an official with delegated authority to do so must expressly order or approve the working of overtime hours in writing. A careful reading of the court of appeals' decision reveals, however, that in reversing this Court's decision in reliance upon the OPM regulation, the court also rejected the theory of "induced" overtime upon which plaintiffs rely here.

The court of appeals began by addressing the question of whether a Federal Circuit panel had the authority to modify or overrule the Court of Claims' <u>en</u> <u>banc</u> decision in <u>Anderson</u>, which the court characterized as: 1) having "held the writing requirement [in the OPM regulation] invalid as inconsistent with the purpose of FEPA because it added a procedural requirement that was not reflected in the statute" and 2) having "also suggested that equitable considerations prevented the government from denying overtime compensation where it 'induced' overtime work." 372 F.3d at 1354. The court of appeals concluded, in agreement with the government, that the panel did possess the authority to overrule <u>Anderson</u>, in light of the Supreme Court's intervening decision in <u>Schweiker v. Hansen</u>, 450 U.S. 785 (1981). <u>Doe</u>, 372 F.3d at 1355.[8]

The court of appeals characterized the <u>Hansen</u> decision as concluding that a writing requirement in a regulation is not invalid "simply because it add[s] an additional procedural requirement to the substantive requirements of [a] statute." It concluded that this holding was "directly at odds with the <u>Anderson</u> line of cases." <u>Doe</u>, 372 F.3d at 1356. It further concluded that <u>Hansen</u> also undermined the reliance on "equitable considerations" that was at the heart of the <u>Anderson</u> line of cases because <u>Hansen</u> (as reinforced by <u>Office of Personnel Management v. Richmond</u>, 486 U.S. 414 (1990)) stood for the proposition that both statutory and regulatory requirements impose binding requirements that must be followed, notwithstanding equitable

---

[8] The issue in <u>Hansen</u> was whether the Social Security Administration (SSA) was estopped from enforcing a regulatory requirement that applications for Social Security benefits be in writing, where the plaintiff had been led to believe by SSA representatives that an oral application for benefits was sufficient. <u>See Doe</u>, 372 F.3d at 1355 (citing <u>Hansen</u>, 450 U.S. at 786). The Court rejected the decision of the Second Circuit in that case, which had ruled for the plaintiff, holding that the court of appeals' "distinction between [the plaintiff's] substantiv[e] eligib[ility] and her failure to satisfy a 'procedural requirement' does not justify estopping petitioner in this case." <u>Hansen</u>, 450 U.S. at 790 (alterations in original). It observed that "[a] court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits." <u>Id.</u>

considerations. Doe, 372 F.3d at 1356-57. It observed that "in light of Hansen and Richmond, we are compelled to hold that the Anderson line of cases is no longer good law and that the written order requirement is not invalid on the ground that it imposes a procedural requirement that limits the right to overtime compensation under the statute or because it is inequitable." Id. at 1357.

The court of appeals then turned to the question of whether the OPM regulation was entitled to deference under Chevron U.S.A. v Natural Resources Defense Council, 467 U.S. 837 (1984). It began by asking "whether Congress has directly spoken to the precise question at issue." Doe, 372 F.3d at 1358. It concluded that the terms "ordered" and "approved" are ambiguous because they "are broad enough to encompass either written or oral communications (or both)." Id. at 1359. The court further concluded, applying Chevron step two, that the regulation was not unreasonable on the grounds that the addition of a writing requirement would be contrary to the statute (FEPA). Id. at 1360. It held that the statutory requirement that overtime work be "officially ordered or approved" "in and of itself is not at odds with the regulation's writing requirement, nor does it suggest that inducement is sufficient to constitute official order or approval." Id.

The court of appeals explained that the statutory structure of FEPA provided support for OPM's decision to impose a formal procedure requiring an order or approval to be in writing because FEPA also contains a separate provision for pay at overtime rates when an employee is in a position "in which the hours of duty cannot be controlled administratively." Id. (citing 5 U.S.C. § 5545(c)(2)). The court also observed that the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-209, "incorporated a different standard for overtime compensation that allowed recovery for inducement" by permitting an employee to receive overtime compensation if an employer "suffer[s] or permit[s]" the employee to work overtime hours. Id. (citing 29 U.S.C. § 203(g)). That FEPA did not use similar language, the court of appeals reasoned, supported OPM's determination that a more formal means of authorization should be required. Id. Finally, the court observed, the writing requirement also served an important purpose of FEPA discussed in its legislative history—to impose oversight mechanisms and safeguards in order to control the government's potential liability for overtime. Id. at 1361.

Finally, the court of appeals held that the writing requirement contained in OPM's regulations was not satisfied by the written documents referenced by the plaintiffs which included memoranda, manuals, bulletins and reports which reflected the expectation of DOJ officials that attorneys would work overtime in order to handle their caseloads. Id. at 1362. The majority of the documents were not written by officials who had been delegated authority to order or approve overtime (372 F.3d at 1362); further, they did not order attorneys to work any particular amount of overtime, nor did they contain an "express directive" to work overtime. Id. at 1363; see Carlsen v. United States, 521 F.3d 1371, 1375 (Fed. Cir. 2008) (rejecting plaintiffs' reliance upon manuals and directives requiring employees to generally follow their supervisors' instructions and emails directing employees to attend meetings because such documents "do not direct the performance of overtime work"; because "to treat such documents as written directives to perform overtime work would have the effect of converting oral directives to perform particular work into written directives to work overtime in virtually any government agency";

and because "none of them directed work in general, or certain tasks in particular, to be performed outside the employees' regularly scheduled shifts").

### 2. The Application of <u>Doe</u> to this Case

As is readily apparent from a reading of <u>Doe</u>, there is nothing in that decision which mandates that an order to work overtime hours (or the approval of the working of such hours after the fact) be in writing in order for overtime to be "officially ordered or approved." To the contrary, the court's discussion of the application of <u>Chevron</u> step one to the OPM regulation implementing FEPA recognizes that the statutory terms "order" and "approve" encompass both written and oral directions. <u>Doe</u>, 372 F.3d at 1359. While the court ruled that it was not unreasonable for OPM to impose a writing requirement in the exercise of its rulemaking authority, it does not follow that the statute cannot be read to permit overtime to be ordered or approved verbally. In fact, the government has acknowledged that the VA does not require an authorization to work overtime to be reduced to writing, noting that "urgent or emergency situations involving patient care may make such a requirement impractical." Def.'s Mot. to Dismiss at 10, n.4.[9]

The central question here is what effect—if any—<u>Doe</u> has on the viability of plaintiffs' argument that overtime is compensable where it is "induced" and not expressly ordered. With respect to that issue, plaintiffs correctly observe that title 38, unlike FEPA, does not contain a provision creating an alternative basis for entitlement to overtime pay for employees who occupy positions in which their hours cannot be controlled administratively. The court of appeals found that the existence of such a provision under FEPA supported the reasonableness of the OPM regulation establishing a more formal approval process for authorizing overtime for employees whose hours of work are subject to administrative control. <u>Doe</u>, 372 F.3d at 1360.

Nonetheless, the Court finds more significant several other critical factors that led the court of appeals to reject overtime claims based on inducement under FEPA. First, and foremost, title 38, like FEPA, uses the term "officially ordered or approved"; it does not employ the kind of expansive language and liberal standard contained in the FLSA (requiring payment at overtime rates where overtime work is "suffered or permitted"). As the court of appeals noted (372 F.3d at 1360), the FLSA's language "allowed recovery for inducement," whereas the language of FEPA appears to contemplate a "more formal means of authorization." <u>Id.</u> at 1361.

---

[9] The parties have cited assorted VA issuances and handbooks in their pleadings. As the court of appeals has observed, "DVA has not issued a comprehensive set of regulations implementing the VHA personnel provisions in title 38" but has instead "set forth its interpretation of the title 38 personnel provisions in the form of manuals, directives, and handbooks." <u>James v. Von Zemenszky</u>, 284 F.3d 1310, 1318-19 (Fed. Cir. 2002). Unfortunately, and somewhat surprisingly, none of the cited issuances and handbooks appear to prescribe any process governing how overtime may be "officially ordered or approved," and the Court was advised by counsel at oral argument that such a prescribed process does not exist.

Second, the court of appeals' rejection of the consideration of equitable factors in determining whether overtime has been "officially ordered and approved" counsels in favor of a strict interpretation of the statutory language. As the court of appeals observed, id. at 1359, that language suggests that there must be a degree of formality to the process of ordering and approving overtime "officially." The kind of implicit approval of overtime alleged in plaintiffs' complaint does not meet that standard of formality or clarity.

The court of appeals also relied on the legislative history of FEPA and noted that an advanced written approval process would promote the necessary oversight and controls over the government's potential overtime liability. Id. at 1360. This same consideration, coupled with the statutory language, leads this Court to conclude that the "officially ordered and approved" language of title 38 should not be read to create a liability for overtime pay based on implied directives or a standard of "inducement" to work overtime. Instead, what is required in order to trigger entitlement to overtime pay under 38 U.S.C. § 7453(e)(1) is an express directive from an authorized VA official (whether written or verbal), ordering (or explicitly authorizing) an employee to respond to View Alerts after they have completed eight consecutive hours of work in a day or forty hours in a week.[10]

In this case, the plaintiffs do not allege that they received such express directions, but rely instead upon a theory of implicit authorization or inducement. For this reason, the Court agrees that, under the reasoning of the court of appeals in Doe, Counts I and III of plaintiffs' complaint must be dismissed for failure to state a claim.[11]

---

[10]   The Court's articulation of a general standard to govern when overtime has been "officially ordered or approved" is based solely on the statutory language, read in light of Doe. As explained supra at note 9, the VA has the authority to promulgate regulations governing entitlement to overtime pay that would provide greater specificity regarding what VA considers an "official order" to work overtime and that would identify a process by which nurses could request advance approval of such overtime.

[11]   In Doe, the court of appeals acknowledged that there exists a "legitimate[] concern[]" that federal agencies may be taking advantage of the "officially ordered" language to "eva[de]" legal requirements and "in effect . . . coerc[e] uncompensated overtime." 372 F.3d at 1364. This is a particularly troubling possibility in the context of title 38 nurses, for whom there exists an express statutory prohibition against the compulsion of overtime in non-emergency situations, even when the nurses will be compensated for working such overtime. 38 U.S.C. § 7459. The government has suggested that individual nurses could challenge a management practice of assigning them more tasks than they can complete without working uncompensated overtime in the context of an appeal of an adverse personnel action taken against them. See also Doe, 372 F.3d at 1364. The Court assumes that the opportunity to secure relief by provoking an adverse action that accuses them of poor performance or of shirking their duties is cold comfort to the cadre of dedicated professionals who care for our Nation's veterans. Nonetheless, the Court's conclusion that overtime pay is not available to the nurses in these circumstances is compelled by the statutory language as interpreted in Doe.

**B. Count IV—Violations of VA's Basic Pay Regulations and Policies**

In Count IV of their complaint, the plaintiffs allege that the VA violated its own basic pay regulations and policies by failing to compensate them at basic hourly rates of pay for the work that they performed to respond to View Alerts outside of their regularly scheduled administrative workweek. Because plaintiffs have failed to establish that these regulations provide them with an entitlement to be paid at basic rates of pay for this work, Count IV must be dismissed for failure to state a claim upon which relief may be granted.

The basic rate of pay for VA employees is set pursuant to 38 U.S.C. § 7404 in the form of an annual rate of pay. The plaintiffs have identified no provision in the statute that entitles employees to receive basic pay that exceeds this annual rate when they perform extra hours of work outside of their prescribed shifts. Instead, the statute provides that employees who work in excess of forty hours in an administrative workweek, or eight consecutive hours, shall be compensated at time and a half rates, but only if such work is "officially ordered or approved."

Indeed, the plaintiffs' argument that they are entitled to be paid at "basic rates" for hours of overtime worked is irreconcilable with the concept of "basic pay" itself. "Basic pay," by definition, does not include pay for additional hours or overtime work. Nigg v. Merit Sys. Prot. Bd., 321 F.3d 1381, 1385 (Fed. Cir. 2003); Mattern v. Dep't of Treasury, 291 F.3d 1366, 1370 (Fed. Cir. 2002); Triponi v. United States, 633 F.2d 933, 935 (Ct. Cl. 1980). Accordingly, Count IV of the complaint, alleging that the VA violated its own basic pay regulations and policies by failing to compensate plaintiffs at basic pay rates for the work that they performed on View Alerts outside of their regular duty hours, fails to state a claim on which relief may be granted.[12]

## CONCLUSION

Based on the foregoing, the government's motion is granted, and all counts in plaintiffs' complaint are dismissed. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

---

[12]   In their response to the government's motion to dismiss, the plaintiffs argued that the VA violated its own rules and policies by failing to schedule its nurses for overtime, notwithstanding that their work requires it. Pls.' Resp. at 19-21. This claim was not made in plaintiffs' complaint and so need not be addressed on this motion to dismiss. It is, in any event, meritless, for the reasons set forth in the government's Reply at 7-9.

# In the United States Court of Federal Claims

**No. 12-920 C**

**STEPHANIE MERCIER , et al.**

**JUDGMENT**

**v.**

**THE UNITED STATES**

Pursuant to the court's Order and Opinion, filed February 27, 2014, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed.

Hazel C. Keahey
Clerk of Court

**February 27, 2014**          By:     s/Debra L. Samler

Deputy Clerk

<u>NOTE</u>: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>. Filing fee is $505.00.