# United States Court of Appeals for the Federal Circuit

———————————

**STEPHANIE MERCIER, AUDRICIA BROOKS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2014-5074

———————————

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00920-EDK, Judge Elaine Kaplan.

———————————

Decided: May 15, 2015

———————————

DAVID M. COOK, Cook & Logothetis, LLC, Cincinnati, OH, argued for plaintiffs-appellants. Also represented by CLEMENT L. TSAO, CLAIRE W. BUSHORN.

JESSICA R. TOPLIN, Commercial Litigation Branch, Civil Division, United States Department of Justice. Washington, DC, argued for defendant-appellee. Also represented by SHELLEY D. WEGER, JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.; GIA M. CHEMSIAN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before WALLACH and CLEVENGER, *Circuit Judges*, and
FOGEL, *District Judge*.[*]

CLEVENGER, *Circuit Judge*.

In a final decision dated February 27, 2014, the United States Court of Federal Claims dismissed the complaint of certain nurses employed by the Department of Veterans Affairs ("the agency"). The nurses claimed entitlement to overtime pay under a statutory provision which requires the agency to compensate "officially ordered or approved" overtime work. 38 U.S.C. § 7453(e)(1). The trial court dismissed the nurses' claim because they did not allege that the agency "expressly directed" their overtime. *Mercier v. United States*, 114 Fed. Cl. 795, 802 (2014). Because the court erred in requiring that the nurses' overtime be officially ordered or approved by express direction to be compensable, we reverse and remand the case for further proceedings. That result renders moot the nurses' separate claim that they are entitled to at least basic pay for overtime hours worked.

I

This case turns on the interpretation of the words "officially ordered or approved" in 38 U.S.C. § 7453(e)(1), the statute which provides overtime pay for nurses employed by the Department of Veterans Affairs. The statute does not require the official order or approval to be in any particular form, and the agency has not enacted any regulation interpreting the statute as mandating any

---

[*]     The Honorable Jeremy Fogel, District Judge, United States District Court for the Northern District of California and Director of the Federal Judicial Center, sitting by designation.

particular procedure that must be followed to qualify for overtime pay.[1]

The agency asserts, and we agree as a matter of statutory interpretation, that the words "officially ordered or approved" in § 7453(e)(1) should have the same meaning as the same words which appear in the Federal Employee Pay Act (FEPA), 5 U.S.C. § 5542(a), which authorizes overtime pay generally for federal employees not covered by other specific statutes, such as § 7543(e)(1). Appellee's Br. at 14.

Substantially the same regulation has applied to FEPA's overtime provision since shortly following its enactment in 1945. In its present form, the regulation requires that overtime work "may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c); *see also* 10 Fed. Reg. 8191, 8194 (July 4, 1945) (original regulation). We refer to this as the "writing regulation" or the "OPM regulation" after the agency that most recently enacted it. *See* 5 U.S.C. § 5548.

## A

The words "officially ordered or approved" in FEPA have long been interpreted by the Court of Claims, one of

---

[1] The agency's handbook presents various policies related to overtime, including, for example, that overtime is to be used only when necessary. J.A. 70. The handbook is an informal agency interpretation and is entitled to deference only "proportional to [its] 'power to persuade.'" *James v. Von Zemenszky*, 284 F.3d 1310, 1319 (Fed. Cir. 2002) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)). We do not find the handbook persuasive, for example because it fails to describe any procedure under which nurses' overtime may be explicitly ordered or approved.

our predecessor courts, the decisions of which bind panels of this court. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

For the first decade after the enactment of FEPA, the Court of Claims enforced the regulation's requirement that approval be "in writing." Thus, *Gaines v. United States*, 132 Ct. Cl. 408 (1955) held that overtime had to be "ordered or approved" in compliance with the regulation to be compensable: "any claim must be based upon the performance of overtime services which were expressly authorized or approved in writing" by an authorized official. *Id.* at 412–13. Prior to *Gaines*, the court twice approved of the requirement in dicta. In *Post v. United States*, 121 Ct. Cl. 94 (1951), the court called the writing regulation "a necessary safeguard against subjecting the Government to improper expense." *Id.* at 99. In *Tabbutt v. United States*, 121 Ct. Cl. 495 (1952), it remarked that a supervisor's signature approving daily time reports "could hardly be said to take the place of an order for these men to work overtime, or of an approval of their claim to compensation for having done so." *Id.* at 498, 505.

The Court of Claims' treatment of the regulation changed in *Anderson v. United States*, 136 Ct. Cl. 365 (1956).[2] The agency in *Anderson* had "induced" employees to work overtime but, in order to escape compensating them for that time, had not ordered or approved the overtime in writing. *Id.* at 370–71.

*Anderson* held that overtime that is "induced," but not explicitly required, is nonetheless "ordered or approved" under FEPA. *Id.* at 370. Further, the court held, the writing regulation could not limit the scope of that sub-

----

[2]    The Court of Claims sat en banc in *Anderson* and, as we later observed, in many of the cases that followed it. *Doe v. United States*, 372 F.3d 1347, 1355 (2004).

stantive right to overtime pay. "The writing was required by the regulations, not by the statute," it explained. "The withholding of written orders or approval reflected observance of the letter of the regulation but denial of the substance of the statute." *Id.* at 370–71. The court concluded that the statutory "mandate to pay additional compensation for overtime hours, when the work was . . . officially ordered or approved," including by inducement, was "overriding," and compensation for such work was therefore "mandatory." *Id.* at 371.

For more than forty years following *Anderson*, the Court of Claims and its successor courts applied *Anderson*'s holdings that "induced" overtime is "ordered or approved" under FEPA, and that the writing regulation does not limit the statutory right to compensation for such time.

Two early leading cases applying *Anderson* were *Adams v. United States*, 162 Ct. Cl. 766 (1963) and *Byrnes v. United States*, 330 F.2d 986 (Ct. Cl. 1963). *Adams* compensated overtime that was "induce[d]" by an agency whose supervisors "knew and approved of this overtime, and in effect authorized it," but withheld written authorization. 162 Ct. Cl. at 768–69. *Byrnes* explained that regulations requiring written authorization of overtime "cannot avoid the plain requirements of the statute for overtime pay when the performance of this overtime is induced by the Government, as it was in *Anderson*, . . . and in this case." 330 F.2d at 989–90.

Later cases in the *Anderson* line considered the boundaries of what constituted "order or approval" by inducement. Thus, the court held that an employer's "mere knowledge" that an employee is working overtime, without inducement or written approval, is not enough to order or approve that work. *Bilello v. United States*, 174 Ct. Cl. 1253, 1258 (1966). Likewise, a "tacit expectation" that employees show up five minutes earlier than ordered

did not show that employees were induced to work over-time. *Albright v. United States*, 161 Ct. Cl. 356, 361 (1963). Where there was "more than only a 'tacit expecta-tion'" but less than an express directive to work overtime, the court asked whether the overtime was "induced." *Baylor v. United States,* 198 Ct. Cl. 331, 359–60 (1972).

By the early 1970s, in the Court of Claims' words, *Anderson* and its progeny had "firmly established" that employees could recover under FEPA for overtime their employers had induced but not expressly ordered. *McQuown v. United States*, 199 Ct. Cl. 858, 866, 1972 U.S. Ct. Cl. LEXIS 454, *11 (1972); *see Baylor,* 198 Ct. Cl. at 359–60 (applying *Anderson* and holding that employer had induced overtime); *Fix v. United States,* 368 F.2d 609, 613 (Ct. Cl. 1966) (applying *Anderson* and holding that an agency could not prohibit compensating overtime that was "required or induced by responsible officials"); *Bantom v. United States*, 165 Ct. Cl. 312, 318 (1964) (applying *Anderson* and finding that overtime was not induced where employees "voluntarily came to work earlier than required" in order to get ready there rather than at home); *Rapp v. United States,* 340 F.2d 635, 644–45 (Ct. Cl. 1964) (applying *Anderson* and compensating induced overtime because the agency "could not—by arbitrarily characterizing the [overtime] as 'voluntary'—abrogate plaintiffs' rights under the statute"); *Gaines v. United States,* 158 Ct. Cl. 497 (1962), *cert. denied,* 371 U.S. 936 (1962) (explaining that *Anderson* "allow[s] recovery [for overtime] even though there may have been no express order, authorization, or approval, and the administrative officials have refused to characterize the work as 'over-time'"); *Gray v. United States*, 136 Ct. Cl. 312, 313 (1956) (in a case decided the same day as *Anderson*, denying an overtime claim because plaintiff was not "induced or directed by his superiors directly or indirectly by writing or otherwise to work overtime"). Judge Skelton twice dissented on the basis that the overtime was not ordered

or approved in writing by an authorized official as the regulation required, but his view never gained a majority. *Baylor*, 198 Ct. Cl. at 371 (Skelton, J., dissenting); *Anderson v. United States*, 201 Ct. Cl. 660, 671–72 (1973) (Skelton, J., dissenting).

Then, the Supreme Court decided *Schweiker v. Hansen*, 450 U.S. 785 (1981) (per curiam) (*Hansen*) and *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) (*Richmond*), neither of which dealt with FEPA. As we discuss below, this court later held that the rationale of these cases overruled *Anderson*'s holding that the writing regulation was invalid.

Plaintiff in *Hansen* sought certain benefits under the Social Security Act. The Act extended benefits only to one who "has filed application," 42 U.S.C. § 402(g)(1)(D), and a regulation required the application to be in writing, 20 C.F.R. § 404.602 (1974). When plaintiff asked a Social Security Administration field representative if she was eligible for a certain benefit, the representative erroneously told her that she was not, and she delayed in filing her application in reliance on that advice. Upon later learning she was eligible, plaintiff filed an application, and sought back payments based on the date of her oral application to the field representative. 450 U.S. at 786–87.

The Second Circuit held that the government was estopped from denying plaintiff benefits retroactive to her oral application. It reasoned that she was "substantively eligible" for benefits and had simply failed to fulfill a "procedural requirement," and held that under such circumstances the field representative's conduct estopped the government from applying the writing requirement. *Hansen v. Harris*, 619 F.2d 942, 948 (2d Cir. 1980), *rev'd sub nom. Schweiker*, 450 U.S. 785.

The Supreme Court reversed. It reasoned that the field representative's error did not remove "the duty of all courts to observe the conditions defined by Congress for

charging the public treasury." *Hansen*, 450 U.S. at 788–89 (quoting *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)). The Court therefore rejected the Second Circuit's conclusion that plaintiff could show estoppel against the government because she was substantively eligible for benefits and simply failed to satisfy a procedural requirement. It held:

> Congress expressly provided in the Act that only one who "has filed application" for benefits may receive them, and it delegated to [the Secretary of Health and Human Services] the task of providing by regulation the requisite manner of application. A court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits.

*Id.* at 790.

Plaintiff in *Richmond* was the recipient of a federal disability annuity. When he sought advice about increasing his work hours while retaining the annuity, federal employees twice gave him erroneous information based on a prior version of the relevant statute. In reliance on that information, plaintiff increased his hours beyond the limits set by the then-current statute and lost six months' worth of benefits. 496 U.S. at 416–18.

The Supreme Court rejected plaintiff's claim that the government was estopped from denying him those benefits. The parties had agreed that plaintiff sought benefits to which he was not entitled under the statute. *Id.* at 424. The Court therefore held that the Appropriations Clause of the Constitution, under which "'no money can be paid out of the Treasury unless it has been appropriated by an act of Congress,'" prevented plaintiff's recovery of benefits to which he was not entitled by statute. *Id.* (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). "[T]he equitable doctrine of estoppel cannot grant

respondent a money remedy that Congress has not authorized," the Court explained. *Id.* at 426.

Meanwhile, the Claims Court and then the Court of Federal Claims, successors to the Court of Claims' trial division, continued to apply *Anderson*'s holdings that overtime can be "ordered or approved" under FEPA by inducement, and that the writing regulation is inoperative so far as it limits that right. *See Crowley v. United States*, 53 Fed. Cl. 737, 789–90 (2002), *aff'd in part on other grounds, rev'd in part on other grounds*, 398 F.3d 1329 (Fed. Cir. 2005); *Buckley v. United States,* 51 Fed. Cl. 174, 217–18 (2001), *aff'd in part on other grounds, rev'd in part on other grounds sub nom. Crowley*, 398 F.3d 1329[3]; *Hannon v. United States*, 29 Fed. Cl. 142, 149 (1993); *DeCosta v. United States*, 22 Cl. Ct. 165, 176 (1990), *aff'd on other grounds*, 987 F.2d 1556 (Fed. Cir. 1993); *Manning v. United States*, 10 Cl. Ct. 651, 663 (1986); *Bennett v. United States*, 4 Cl. Ct. 330, 337 (1984). *See also Bowman v. United States*, 7 Cl. Ct. 302, 308, 308 n.6 (1985) (applying *Anderson* to a different provision of FEPA the court considered "analogous").

A claim to FEPA overtime under § 5542, which contains the "officially ordered or approved" language, first came before this court in *Doe v. United States*, 372 F.3d 1347 (2004). Plaintiffs in that case were a class of Department of Justice attorneys who sought compensation for overtime hours they alleged that they had been induced, but not explicitly ordered, to perform. *Id.* at 1349–50.

---

[3]  *Crowley* and *Buckley* were consolidated along with other cases and appealed to this court, which did not consider whether plaintiffs' overtime had been "ordered or approved." *Crowley*, 398 F.3d 1329.

The Court of Federal Claims granted summary judgment for plaintiffs on the issue of liability, holding that although the overtime had not been ordered "in writing" as required by the regulation, under *Anderson* plaintiffs were nevertheless entitled to pay if they could prove the overtime was "officially ordered or approved" through inducement. *Doe v. United States*, 54 Fed. Cl. 404, 410, 414–18 (2002). The United States petitioned for interlocutory appeal in order to decide whether overtime hours may be "officially ordered or approved" under § 5542 of FEPA without meeting the writing regulation's requirements, and this court granted its petition. *Doe v. United States*, 67 F. App'x 596, 597 (Fed. Cir. 2003).

On appeal, this court reversed. *Doe*, 372 F.3d 1347. We first held that the rationale of *Hansen* and *Richmond* overruled *Anderson*'s holding that the writing regulation could not limit the substantive scope of the statutory right to compensation for overtime that was "officially ordered or approved." To the extent that the *Anderson* cases held the writing regulation was invalid because it added a procedural requirement, we explained, they are directly contradicted by *Hansen*'s holding that "[a] court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits." *Id.* at 1354–56 (quoting *Hansen*, 450 U.S. at 790). To the extent that the *Anderson* cases imposed liability on the government for equitable reasons, we held they were contradicted by *Richmond*'s holding that equitable considerations cannot grant a money remedy Congress has not authorized. *Id.* at 1356–57 (citing *Richmond*, 496 U.S. at 426).

We therefore held:

[T]o the extent that the *Anderson* line of Court of Claims cases held that the Civil Service Commission was without authority to impose a "procedural" written order requirement because it restricted

the substantive scope of the overtime statute or because of equitable considerations, they are inconsistent with *Hansen* and *Richmond*. In light of *Hansen* and *Richmond*, we are compelled to hold that the *Anderson* line of cases is no longer good law and that the written order requirement is not invalid on the ground that it imposes a procedural requirement that limits the right to overtime compensation under the statute or because it is inequitable.

*Id.* at 1357.

Having determined that the writing regulation could not be disregarded, we next considered whether it was entitled to *Chevron* deference. *Chevron U.S.C. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43 (1984). Because the phrase "ordered or approved" is ambiguous as to whether the order or approval must be in writing or may instead be oral, our analysis proceeded to step two. *Doe*, 372 F.3d at 1358–59.

At *Chevron* step two, we held that the writing regulation is a reasonable interpretation of FEPA's "officially ordered or approved" requirement. The regulation was enacted pursuant to express congressional authorization to engage in rulemaking, which is "a very good indicator" that *Chevron* deference is warranted. *Id.* at 1359 (quoting *United States v. Mead Corp.*, 553 U.S. 218, 229 (2001)). Plaintiffs therefore bore the burden of showing that the writing regulation was "arbitrary or otherwise unreasonable." *Id.* (quoting *Koyo Seiko Co. v. United States*, 258 F.3d 1340, 1347 (Fed. Cir. 2001)).

*Doe* held that plaintiffs had not met their burden of proving the regulation was unreasonable because the writing requirement "does not contradict the language of FEPA." *Id.* at 1360. We reasoned that the writing requirement does not contradict the statute's plain text: the statute's limitation to "officially ordered or approved"

overtime "in and of itself is not at odds with the regulation's writing requirement, nor does it suggest that inducement is sufficient to constitute official order or approval." *Id.* On this point, we distinguished the corresponding provision of the Fair Labor Standards Act of 1938 (FLSA), which applies generally to non-government employees. An employee is entitled to overtime pay under FLSA if the employer "suffer[s] or permit[s]" overtime work, a broad category that can include overtime about which the employer has mere knowledge, as well as induced overtime. 29 U.S.C. § 203(g); *Doe*, 347 F.3d at 1360–61. That FEPA's "officially ordered or approved" language is narrower, we reasoned, suggests that it does not require compensating all overtime that is "suffer[ed] or permit[ted]." *Id.* Finally, we reasoned that the writing requirement served one of FEPA's purposes, namely, "to control the government's liability for overtime," and noted that other purposes include, for example, "ensuring that employees receive[] overtime compensation." *Id.* at 1361. We concluded that the writing regulation was entitled to *Chevron* deference, *id.* at 1362, and reversed the grant of summary judgment on liability for plaintiffs because they had failed to show it was satisfied, *id.* at 1364.

### B

Plaintiffs in this case are two individuals and a putative class of registered nurses currently or formerly employed by the agency under Title 38. They contend that the agency denied them overtime pay to which they were entitled under 38 U.S.C. § 7453, which requires the agency to compensate nurses for "officially ordered or approved" overtime work. 38 U.S.C. § 7453(e)(1).

The nurses allege that they were required to work overtime on a "recurring and involuntary basis" in order to perform tasks known as View Alerts, which the nurses describe as time-sensitive requests for information related to patient care. Compl. ¶¶ 15, 17. They allege that agency

personnel with the authority to order or approve overtime had "knowledge" the nurses were working overtime, and in fact "expected, required, and induced" that work. *Id.* at ¶ 17. The nurses add that the agency subjected nurses who failed to timely complete View Alerts to enhanced scrutiny and greater risk of disciplinary action, *id.* at ¶ 18, continued to increase the volume of View Alerts assigned despite knowing that nurses were unable to complete them during regular hours, *id.* at ¶¶ 19, 20, and responded to nurses' requests for compensation inadequately or inconsistently, *id.* at ¶¶ 21–24.

The Court of Federal Claims dismissed the nurses' claim to overtime under § 7453 for failure to state a claim on which relief could be granted. *Mercier v. United States*, 114 Fed. Cl. 795 (2014). It noted that the nurses' allegations, if proven true, "would likely suffice to establish precisely the sort of 'inducement'" to work overtime that the *Anderson* line of cases held was sufficient to constitute "order or approval" of overtime under FEPA. *Id.* at 801–02. Because § 7453 of Title 38 and § 5542 of FEPA have identical language in that respect, *id.* at 801, the court recognized that the key issue before it was whether the *Anderson* standard regarding inducement remains good law following this court's decision in *Doe*. *Id.* at 802.

The Court of Federal Claims concluded that *Doe* had overruled *Anderson* in its entirety and therefore that, following *Doe*, "entitlement to overtime pay is triggered only when an authorized VA official has, either verbally or in writing, expressly directed" specified overtime work or approved pay for it after the fact. *Id.* It pointed to *Doe*'s two bases for overruling *Anderson*: first, to the extent *Anderson* and its progeny held the writing regulation invalid simply because it added an extra procedural requirement, *Hansen* overruled that holding; and second, to the extent the *Anderson* cases used equitable considerations to hold the government liable for overtime it had induced, both *Hansen* and *Richmond* undermined their

reasoning. *Id.* at 802–03 (citing *Doe*, 372 F.3d at 1354–57).

The Court of Federal Claims did not analyze whether *Hansen* or *Richmond* affected more than the writing regulation under FEPA. Nor did it consider whether a panel of this court could overrule binding precedent on an issue not disturbed by intervening Supreme Court or en banc authority.

Because the nurses had alleged that they were "induce[d]" to work overtime but not that their overtime was "expressly directed," the court dismissed their claim. *Id.* at 805. The nurses timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

On appeal, the nurses argue that *Doe* did not overrule *Anderson's* interpretation of the statutory phrase "officially ordered or approved," and in fact could not have overruled that holding on the authority of *Hansen* and *Richmond*. They do not contest that *Doe* held *Hansen* and *Richmond* overruled *Anderson* so far as it invalidated the FEPA writing regulation, either as a procedural limit on the substantive right granted by the statute, or for equitable reasons. Instead, the nurses correctly contend that holding is not relevant to their case, because no procedural regulations interpret the Title 38 overtime provision, and they seek no relief by way of equity.

Presumably because the claimant in *Richmond* sought benefits that the statute concededly did not provide, 496 U.S. at 424, the nurses focus their arguments on *Hansen*. They contend that *Hansen* is not relevant to whether induced overtime is "officially ordered or approved" under FEPA. Specifically, the nurses note that *Hansen* concerned an entirely different statutory scheme, and did not interpret that statute, much less determine whether it included inducement. *Hansen* turned instead entirely on

the validity of the different writing regulation it considered, making it irrelevant to *Anderson*'s statutory interpretation. The nurses conclude that *Doe* could not have held that *Hansen* overruled *Anderson*'s interpretation of FEPA. Further, no en banc decision of this court has interpreted FEPA's "ordered or approved" language to exclude order or approval by way of inducement.

To the extent that *Doe* can be read to consider the "inducement" standard, the nurses argue that its statements are dicta or not relevant here. They argue that *Doe* interpreted FEPA only so far as was necessary to find that the writing regulation was not unreasonable at *Chevron* step two. It follows that *Doe*'s statement that FEPA "does [not] suggest that inducement is sufficient to constitute official order or approval," 372 F.3d at 1360, considered a question that was not directly before the court.

The nurses conclude that *Anderson*'s interpretation of the phrase "officially ordered or approved" in FEPA survives *Hansen* and *Richmond*, and thus *Doe*, too. Because Title 38's provision for nurse overtime was enacted in 1991, following decades of consistent application of the *Anderson* standard by the Court of Claims and its successors, the nurses contend that we should consider Congress to have intended the same interpretation to apply to § 7453. PL 102–40, May 7, 1991, 105 Stat. 187. They therefore ask us to hold that the Court of Federal Claims erred in dismissing their complaint for failure to allege an "express directive" to work overtime, when they alleged "inducement" that would have sufficed under the *Anderson* standard.

III

The government agrees that the phrase "officially ordered or approved," as it appears in § 7453, should carry the same meaning as the same language in FEPA. Appellee's Br. at 14; Oral Argument at 29:00–29:30.

It argues that the phrase "officially ordered or approved" in FEPA requires an express directive to work overtime. For support, the government relies on *Doe*'s statement that the phrase "officially ordered or approved" in FEPA "does [not] suggest that inducement is sufficient to constitute official order or approval," which it characterizes as a holding. 372 F.3d at 1360.

When asked at oral argument how the *Doe* court had the authority to overrule *Anderson*'s interpretation of FEPA, the government responded that *Hansen* had undermined *Anderson*'s rationale for adopting the inducement standard. Oral Argument at 30:30. It could not, however, point to any language in *Hansen* in support of this view. Specifically, the government could not identify any part of *Hansen* that is relevant to *Anderson*'s interpretation of FEPA, including its holding that overtime may be "ordered or approved" through inducement. *Id.* at 24:30. The government did not argue that *Richmond* overruled *Anderson*'s statutory interpretation, nor could it, because plaintiff in *Richmond* agreed he sought a right the statute did not grant. 496 U.S. at 424.

## IV

We review de novo the Court of Federal Claims' dismissal of a complaint for failure to state a claim upon which relief may be granted. *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1328 (Fed. Cir. 2012). In so doing we must presume that the facts are as the complaint alleges and draw all reasonable inferences in the plaintiff's favor. *Gould Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007)).

A

As *Doe* recognized, Court of Claims decisions bind this court unless they are overruled by intervening Supreme Court authority or by this court en banc. *Doe*, 372 F.3d at 1354; *see also Tex. Am. Oil Corp. v. United States Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc); *S. Corp. v. United States*, 690 F.2d 1368, 1370–71, 1370 n.2 (Fed. Cir. 1982) (en banc); *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1373 (Fed. Cir. 2000).

The government has failed to present any Supreme Court or en banc precedent overruling the Court of Claims' holding, in *Anderson* and its progeny, that overtime the government induces its employee to perform is "ordered or approved" under FEPA and must be compensated if that Act's other requirements are met. *Anderson*, 136 Ct. Cl. at 370.

Neither *Hansen* nor *Richmond* has any relevance to *Anderson*'s interpretation of FEPA, and the government points to no other binding authority in support of its argument. Both *Hansen* and *Richmond* denied the plaintiff's claim of entitlement under principles of equity to a benefit otherwise denied the plaintiff by a valid regulation (in *Hansen*) or statute (in *Richmond*). Those cases reached this result based on the principle that it is "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Hansen*, 450 U.S. at 788; *Richmond*, 496 U.S. at 420; *see also Koyen v. Office of Pers. Mgmt.*, 973 F.2d 919 (Fed. Cir. 1992) (citing *Hansen* and *Richmond* and noting that "[t]he Supreme Court has left no doubt" of that principle). The issue here is not whether the nurses are entitled to a payment from the public treasury without Congressional authorization. It is clear that Congress, in both § 5542 of FEPA and § 7453 of Title 38, did authorize the payment of "officially ordered or approved" overtime work. Instead, the question *Anderson* decided when it interpreted the FEPA provision, and

the question before us now with respect to § 7453, is whether plaintiffs' overtime is within the scope of the statutory grant. Neither *Hansen* nor *Richmond* bear on that question, all the more so because they arose under different statutory schemes.

In the absence of authority from the Supreme Court, this court could only overrule the "inducement" aspect of the *Anderson* line of cases were we to sit en banc. *George E. Warren Corp. v. United States*, 341 F.3d 1348, 1351–52 (Fed. Cir. 2003) ("[T]o overrule a precedent, this court must rule en banc."); *see also* Fed. Cir. Rule 35(a)(1) ("only the court en banc may overrule a binding precedent"). It follows, of course, that neither this panel nor the *Doe* court could overrule *Anderson*'s interpretation that inducement satisfies FEPA's "officially ordered or approved" requirement.

The government's reliance on *Doe*'s statement to the effect that the phrase "ordered or approved" does not necessarily include induced overtime is therefore misplaced. 372 F.3d at 1360. As discussed, the *Doe* court did not have the authority to overrule *Anderson*'s statutory interpretation. Nor did it try to do so. That statement was made in the course of determining whether the writing regulation was a reasonable interpretation of FEPA entitled to *Chevron* deference. *Id.* The court made it simply by way of concluding that requiring a written order does not contradict FEPA's plain text. *Id.*

The rest of *Doe*'s discussion of inducement comes in the context of distinguishing FEPA's "ordered or approved" standard from the more liberal "suffer or permit" standard of FLSA. 372 F.3d at 1360–61. FLSA's standard compensates overtime work which the employer merely "knows or has reason to believe" the employee is performing, as well as overtime the employer induces. 29 C.F.R. § 785.11 (2015); *see also Doe*, 372 F.3d at 1360–61. The *Doe* court correctly concluded that FEPA's use of the

narrower phrase "ordered or approved" suggests that its coverage is not so broad as FLSA's. 372 F.3d at 1361. This, however, is simply because FEPA does not require compensating for overtime of which the employer has "mere knowledge," as recognized in the *Anderson* line of cases. *Bilello v. United States*, 174 Ct. Cl. 1253, 1257 (1966).[4]

*Doe* ultimately held that the OPM regulation's interpretation of the phrase "officially ordered or approved" in FEPA as requiring a writing was entitled to *Chevron* deference "because it comports with, and indeed furthers, the language and purpose of FEPA." 372 F.3d at 1362. Its analysis ended there. Where *Anderson* held the regulation invalid and accordingly considered the full scope of the statutory right, *Doe* enforced the writing regulation and had no cause to consider whether the phrase "officially ordered or approved" encompassed forms of order or approval that might by their nature never be put "in writing." The question before us today—whether overtime may be "ordered or approved" by inducement, albeit under a different statute—was simply never considered by the *Doe* court. To the contrary, as *Doe* explained when discussing *Hansen*, a procedural regulation is not invalid simply because it narrows the breadth of a statutory right. 372 F.3d at 1355–56. In order to hold the writing requirement enforceable, *Doe* did not need to overrule, and could not have overruled, *Anderson*'s earlier holding

---

[4]    *Doe* also noted that the writing regulation was consistent with one of the key purposes of FEPA, namely "to control the government's liability for overtime," while another key purpose evidenced by the legislative history is to "ensur[e] that employees received overtime compensation." 372 F.3d at 1361. *Anderson* adopted the inducement standard in order to fulfill that second purpose. 136 Ct. Cl. at 370–71.

about the statute's breadth. Thus, our current clarification of *Doe* does not in any way undermine its holding that the regulation was entitled to *Chevron* deference.

We therefore hold that *Anderson*'s interpretation of 5 U.S.C. § 5542, namely that overtime is "officially ordered or approved" where it is induced by one with the authority to order or approve overtime but not expressly directed, remains good law. *See Anderson*, 136 Ct. Cl. at 370.

B

The foregoing section concerns the interpretation of the phrase "officially ordered or approved" as it appears in § 5542 of FEPA. The parties agree that the same phrase in § 7453 of Title 38 should carry the same interpretation.

We agree. The Supreme Court has held, as the government observes, that "when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); Appellee's Br. at 14. The overtime provisions in FEPA and Title 38 are certainly similar in purpose.

Further, Title 38 was amended to add § 7453 in 1991. Department of Veterans Affairs Health-Care Personnel Act of 1991, PL 102–40, May 7, 1991, 105 Stat. 187 (adding §§ 7451–58, which govern pay for nurses and other healthcare personnel, among other provisions). Subpart 7453(e)(1), which includes the phrase "officially ordered or approved," has not changed since the statute's enactment.[5] By 1991, as explained above, the Court of Claims

---

[5]    The section has been amended twice with no changes to § 7453(e)(1). Other amendments were technical or are not relevant. Veterans' Benefits Improve-

and its successor courts had consistently enforced the *Anderson* standard for more than thirty years. We presume that Congress was aware of that existing interpretation of 5 U.S.C. § 5542 when it enacted 38 U.S.C. § 7453, and that it intended for induced overtime to also be considered "ordered or approved" under the later statute. *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978).

We therefore hold that the *Anderson* line of cases' interpretation of the phrase "officially ordered or approved" in 5 U.S.C. § 5542 also governs that language where it appears in 38 U.S.C. § 7453.

The nurses allege the agency has "knowledge" that they work overtime "on a recurring and involuntary basis," and that the agency ordered or approved such work through "expectation, requirement, and inducement." Compl. ¶ 40; *see also id.* at ¶¶ 14–26. As the trial court correctly observed, their allegations state a claim upon which relief may be granted under *Anderson*'s interpretation of the phrase "officially ordered or approved." *Mercier*, 114 Fed. Cl. at 801–02. We therefore reverse the dismissal of the nurses' claim and remand for further proceedings under the *Anderson* standard.

## C

The nurses also appeal the trial court's dismissal of the nurses' claim that, in the event they are not compensated at an overtime rate for any overtime hours worked, they are entitled to basic pay for those hours. Compl. ¶¶ 68–74.

At oral argument, the nurses agreed that a decision in their favor on their claim to statutory overtime pay would

---

ments Act of 1994, PL 103–446, Nov. 2, 1994, 108 Stat. 4645; Caregivers and Veterans Omnibus Health Services Act of 2010, PL 111-163, May 5, 2010, 124 Stat. 1130.

moot the claim to basic pay for overtime hours. Oral Argument at 4:20. We thus do not reach, and express no view on, their claim to basic pay.

## CONCLUSION

Accordingly, we reverse the Court of Federal Claims' dismissal of the nurses' claim to overtime pay under 38 U.S.C. § 7453 and remand for further proceedings under the correct interpretation of that statute.

**REVERSED IN PART AND REMANDED**

## COSTS

No costs.